571 S.E.2d 588 (2002)
In the Matter of the Appeal of the SOCIETY FOR the PRESERVATION OF HISTORIC OAKWOOD and Mozelle Jones, Property Pin # XXXXXXXXXX & XXXXXXXXXX.
Raleigh Rescue Mission, Inc., and Coggins Construction Company, Petitioners,
v.
Board of Adjustment of the City of Raleigh, The Society for the Preservation of Historic Oakwood and Mozelle Jones, Respondents.
No. COA01-1274.
Court of Appeals of North Carolina.
November 5, 2002.
Thomas C. Worth and George B. Currin, Raleigh, for petitioners-appellants.
*589 Satisky & Silverstein, by John Silverstein, Raleigh for respondent-appellee Raleigh Board of Adjustment; Poyner & Spruill L.L.P., by Robin Tatum Morris and Kacey Coley Sewell, Raleigh, for respondents-appellees Society for the Preservation of Historic Oakwood and Mozelle Jones.
THOMAS, Judge.
Raleigh Rescue Mission, Inc. and Coggins Construction Company, petitioners, appeal the trial court's order affirming a decision of respondent Board of Adjustment of the City of Raleigh (Board).
The Board determined that the facility which petitioners plan to construct fails to meet multi-family housing requirements because of its proposed use. In actuality, according to the Board, the facility is a form of "transitional housing." Transitional housing is not permitted in a district zoned Shopping Center, and Office and Institution-II under the Raleigh City Code. Multi-family housing, however, is permitted.
Petitioners' primary contention is that the Board lacked jurisdiction to even hear the matter. For the reasons herein, we agree and reverse the order of the trial court.
The Rescue Mission is a charitable organization providing food and shelter to the homeless and others in need. It proposes here to build a residential facility for women and children on a 7.72 acre site at the corner of New Bern Avenue and Swain Street in Raleigh, North Carolina. The area is locally known as "Historic Oakwood."
Respondents Mozelle Jones, a neighboring property owner, and the Society for the Preservation of Historic Oakwood (Oakwood) oppose the development. When the Rescue Mission initially sought site plan approval for the facility as a "hotel," Jones and Oakwood appealed to the Board for an interpretation of that term based on the Raleigh City Code. Following a hearing on 14 December 1998, the Board concluded that the Rescue Mission's proposal did not meet the definition of a hotel. The decision was not appealed. Instead, the Rescue Mission revised its site plan and re-characterized the facility as a "multi-family dwelling." In July of 1999, the revision was submitted to the Comprehensive Planning Committee of the Raleigh City Council.
Later, in response to an inquiry from Deputy City Attorney Ira Botvinick, Zoning Inspector Supervisor Larry Strickland issued a memorandum of his opinion of the contentions in the parties' briefs. Strickland stated that while the multi-family building proposed by petitioners is permitted by the zoning code, the proposed use "may not be."
On 14 September 1999, the Comprehensive Planning Committee, a subcommittee of the Raleigh City Council, reviewed the plan and determined that the facility was a permissible multi-family dwelling. It referred the matter to the City Council with a recommendation for approval. Oakwood and Jones, however, again appealed to the Board for an interpretation, citing Strickland's memorandum and the Comprehensive Planning Committee's recommendation as bases for the appeal. On 21 September 1999, the City Council approved the revised site plan while noting the pending appeal.
The hearing on the appeal came before the Board on 13 December 1999. The Rescue Mission did not participate in the hearing other than for the limited purpose of contesting the Board's authority and jurisdiction to proceed.
The Board ruled that the proposed facility can not be properly classified "multi-family housing," which is permitted in the zoning district. Rather, it would be a type of "transitional housing/emergency shelter," which is not allowed. In reaching its decision, the Board concluded, "Although the zoning classifications applicable to the subject property would permit the development of multi-family housing on the site, it is the nature of the use that determines whether it can be located in the zoning district, and not the nature of the zoning classification that determines what the proposed use is called."
Petitioners appealed to Wake County Superior Court. The trial court concluded that the Board "had jurisdiction to review the order, decision, or determination of Zoning Inspections Supervisor, Larry Strickland," *590 and affirmed the decision of the Board. Petitioners appeal.
On review of a trial court's order regarding a board's decision, we examine for error of law by determining whether the trial court: (1) exercised the proper scope of review; and (2) correctly applied this scope of review. Tucker v. Mecklenburg County Zoning Bd. of Adjustment, 148 N.C.App. 52, 55, 557 S.E.2d 631, 634 (2001), disc. review allowed, 355 N.C. 758, 566 S.E.2d 483 (2002). Here, petitioners had contended in their petition for writ of certiorari to Wake County Superior Court that the Board lacked jurisdiction to hear the matter. The trial court stated that it applied a whole record review and ruled the Board had jurisdiction and the Board's decision contained no errors of law. Because the issue of whether the Board had jurisdiction is a question of law, the trial court applied the incorrect standard of review. The appropriate review is de novo. See id. (if petitioner argues the board's decision was based on error of law the trial court applies de novo review). For the same reason, this Court applies de novo review. Id. (after determining the actual nature of the contended error the appellate court then proceeds with the proper standard of review). De novo review requires us to consider the question anew, as if not previously considered or decided. Id.
By their first assignment of error, petitioners claim the trial court erred in concluding that the Board had jurisdiction to review Strickland's memorandum, because it did not constitute an "order ... decision, or determination," as required by N.C. Gen.Stat. § 160A-388(b) and the Code.
Section 160A-388(b) of the North Carolina General Statutes provides:
The board of adjustment shall hear and decide appeals from and review any order, requirement, decision, or determination made by an administrative official charged with the enforcement of any ordinance adopted pursuant to this Part. An appeal may be taken by any person aggrieved or by an officer, department, board, or bureau of the city.
N.C. Gen.Stat. § 160A-388(b) (2001) (emphasis added).
Under the Raleigh Zoning Code, the Board "may exercise any and all powers prescribed by general law." Raleigh Zoning Code § 10-1061. It likewise provides that among the Board's duties is hearing "[a]ppeals from alleged errors in orders, decisions, or determinations of administrative officials charged with the enforcement or requests by such officials for interpretations of Chapter 2 of this Part." Raleigh Zoning Code § 10-1061(c)(1) (emphasis added).
Additionally, section 10-2142(a) of the Code states:
Any person aggrieved or any agency or officer, department, board, including the governing board of the City of Raleigh affected by any decision, order, requirement, or determination relating to the interpretation, compliance, or application of chapters 1 and 2 of this Part and made by an administrative official charged with the enforcement of these chapters may file an appeal to the Board of Adjustment.
Raleigh City Code § 10-2142(a) (emphasis in original). Since the Board had no authority to hear requests by Jones and Oakwood for interpretations of the Code, see Raleigh Zoning Code § 10-1061(c)(1), we must determine whether Jones and Oakwood appealed from an "order ... decision, or determination" of an administrative official. N.C. Gen.Stat. § 160A-388(b); see also Raleigh City Code § 10-2142(a).
Both parties agree that Zoning Inspector Strickland is an "administrative official." Petitioner, however, disputes Oakwood and Jones's contention that Strickland issued an "order ... decision, or determination" upon which they could base an appeal. We agree with petitioners that Strickland issued no appealable decision.
In response to questions by Botvinick regarding whether the proposed facility was permitted under the Code, Strickland reviewed the written arguments submitted by both parties to the Comprehensive Planning Committee. He then issued the following memorandum to Botvinick and Planning Director George Chapman:

*591 As we briefly discussed yesterday, I have read through the two "briefs" submitted to the [Comprehensive Planning] [C]ommittee by Mr. Worth and Ms. Morris. Without question, the new building proposed meets the code definition of multi-family found in 10-2002.

Mr. Worth states on page 2 that signed leases will be required which will provide for monthly payment by cash based on means to pay, services performed for the mission, grants and scholarships. This appears to be vague. What means to pay? Is there a minimum amount? As I recall Reverend Foster's testimony, everyone that stays at the mission, must perform services for the mission so is this really payment? Most apartments have a minimum lease period of 3, 6, or 12 months. It appears that the mission does not.
The facts presented by Ms. Morris with respect to the Board of Adjustment case should not be over looked. Much of the testimony at the meeting where the Board ruled that the proposed facility as represented by the testimony provided, including the approved site plan does not meet the qualifications as a hotel/motel as intended by the code, was based on the missions over all purpose. Has that changed to the point that the Board's decision is not relevant now?
Clearly the existing code does not specifically permit or necessarily prohibit a facility like the Rescue Mission. The proposed multi-family building proposed by the mission is permitted. The overall operation of the mission on this site, based on the implication of the Board of Adjustment case, may not be.

(Emphasis added).
The legislature has not defined the words "order, decision ... or determination." N.C. Gen.Stat. § 160A-388(b). We therefore accord the words their plain meaning. See Grant Const. Co. v. McRae, 146 N.C.App. 370, 376, 553 S.E.2d 89, 93 (2001) (where statute does not define a word, courts must accord the word plain meaning and refrain from judicial construction).
Moreover, section 10-2002 of the Code, "Definitions," states that all words "have their commonly accepted and ordinary meaning" unless specifically defined in the Code. Raleigh City Code § 10-2002. The section lists "an ordinary dictionary" as the primary source for interpreting non-legal terms. Id. Finally, "[w]ords and phrases of a statute `must be construed as a part of the composite whole and accorded only that meaning which other modifying provisions and the clear intent and purpose of the act will permit.'" Vogel v. Reed Supply Co., 277 N.C. 119, 131, 177 S.E.2d 273, 280 (1970) (quoting 7 Strong's N.C. Index 2d, Statutes § 5).
The Oxford American Dictionary defines "decision," as "1. the act or process of deciding. 2. a conclusion or resolution reached, esp. as to future action, after consideration. (have made my decision) 3. (often foll. by of) a. the settlement of a question. b. a formal judgment." The Oxford American Dictionary 245 (1999).
"Determination" is "the process of deciding, determining, or calculating." It is further defined as "the conclusion of a dispute by the decision of an arbitrator" and "the decision reached." Id. at 258. "Order" is defined as "an authoritative command, direction, instruction, etc." Id. at 697.
Based on the above definitions, and construing the words as a part of the composite whole, the order, decision, or determination of the administrative official must have some binding force or effect for there to be a right of appeal under section 160A-388(b). Where the decision has no binding effect, or is not "authoritative" or "a conclusion as to future action," it is merely the view, opinion, or belief of the administrative official. See Midgette v. Pate, 94 N.C.App. 498, 502-03, 380 S.E.2d 572, 575 (1989) (under section 160A-388(b), "Once the municipal official has acted, for example by granting or refusing a permit, `any person aggrieved' may appeal to the board of adjustment.") (emphasis added). We do not believe section 160A-388(b) sets forth an appellate process where no legal rights have been affected by the "order, decision ... or determination" of the administrative official.
Strickland had no decision-making power at the time he issued his memorandum. It *592 was merely advisory in response to a request by Botnovick. The memorandum itself affects no rights.
Strickland's determination that "without question, the new building proposed meets the code definition of multi-family found in 10-2002," while unequivocal, was without binding force. Likewise, Strickland's equivocal statements regarding the proposed use neither constitute decisions or determinations, nor adversely affect Oakwood and Jones. He wrote: "The proposed multi-family building proposed by the mission is permitted. The overall operation of the mission on this site, based on the implication of the [14 December 1998] board of adjustment case, may not be." Strickland issued no order, decision, or determination. Therefore, Oakwood and Jones cannot claim to be "person[s] aggrieved" who have a right of appeal under N.C. Gen.Stat. § 160A-388(b).
Because we hold the trial court erred in determining that the Board had jurisdiction, we need not reach petitioners' remaining jurisdictional arguments.
REVERSED.
Judges MARTIN and TYSON concur.