JEFFREY MEIER, PETITIONER v. CITY OF CHARLOTTE AND CITY OF CHARLOTTE ZONING BOARD OF ADJUSTMENT, RESPONDENTS

No. COA09-1081

(Filed 17 August 2010)

**Appeal and Error— untimely appeal—subject matter jurisdiction**

A *de novo* review revealed that the trial court erred in a zoning case by determining that the Board of Adjustment had subject matter jurisdiction to hear petitioner's untimely appeal. The MacVean letter was a specific order, requirement, decision, or determination referenced in Section 5.110(1) of the Charlotte Code, and thus, petitioner should have noted his appeal from the interpretation of the MacVean letter within 30 days of 7 March 2008.

Appeal by respondents from order entered 12 June 2009 by Judge Robert P. Johnston in Mecklenburg County Superior Court. Heard in the Court of Appeals 9 February 2010.

*Moretz & Skufca, PLLC, by Ronald A. Skufca, for petitioner-appellee.*

*K&L Gates, LLP, by Collin W. Brown and John H. Carmichael, for respondent-appellant.*

ERVIN, Judge.

Respondents City of Charlotte and the City of Charlotte Zoning Board of Adjustment appeal from an order entered by the trial court finding that Petitioner Jeffrey Meier had filed an appeal to the Board of Adjustment in a timely manner; that the Board of Adjustment had "subject matter jurisdiction to hear Petitioner's . . appeal;" and that the Board of Adjustment "should not have dismissed Petitioner's . . . appeal" as untimely and remanding this case to the Board of Adjustment for the purpose of hearing "Petitioner's application for appeal on the merits as soon as the same may be calendared for hearing and no later than sixty (60) days from the date hereof." After careful consideration of the record in light of the applicable law, we conclude that the trial court's order should be reversed.

## I. Factual Background

Petitioner resides at 1568 Clayton Drive in Charlotte, North Carolina. In 2006, Dancy Properties, LLC purchased a lot located at 1562 Clayton Drive, which is adjacent to the lot owned by Petitioner. In 2007, Dancy commenced construction of a single-family residence at 1562 Clayton Drive. During the construction process, Petitioner questioned the extent to which the structure's height complied with provisions of the applicable zoning ordinance. As a result of Petitioner's inquiry and a similar question posed by Dancy, a hold was placed on the certificate of occupancy for 1562 Clayton Drive until the zoning-related issues were resolved.

Charlotte's interim Zoning Administrator, Keith MacVean, agreed to meet with the interested parties in order to resolve the questions which had arisen with respect to the structure's height. In February 2008, Mr. MacVean and Katrina Young, Mr. MacVean's successor, made separate visits to the lot located at 1562 Clayton Drive with a Dancy representative and Petitioner's attorney. At those meetings, which occurred during the construction process, the parties walked around the property and discussed how the measurements necessary to apply the height restrictions in the zoning ordinance should be made. In addition, Dancy provided site plans and architectural drawings that contained information concerning the height and location of the structure for Mr. MacVean's consideration. Mr. MacVean and Ms. Young explained that a letter would be sent notifying Dancy and Petitioner of the manner in which the zoning ordinance would be interpreted and the extent to which additional documentation would be needed so that the builder could obtain a certificate of occupancy.

On 28 February 2008, after having "visited the property located at 1562 Clayton Drive" and "reviewed all pertinent site plans and elevations," Mr. MacVean mailed his final interpretation to Joe Dancy of Dancy Properties and Petitioner's counsel. In his letter, MacVean explained that, according to Section 9.205 of the Charlotte Code, the "maximum height in the R-5 Zoning District is 40 feet." Mr. MacVean also noted that "[f]ootnote six (6) to chart 9.205(1) . . . allows a building which abuts a residential use to exceed the 40 foot height limitation as long as the side and rear yards abutting the residential use are increased by one (1) foot for every foot of building above 40 feet." The letter quoted the definition of "height" set out in the zoning regulations as:

> The vertical distance between the average grade at the base of a structure and the highest part of the structure, but no[t] including sky lights, and roof structures for elevators, stairways, tanks, heating, ventilation and air-conditioning equipment, or similar equipment for the operation and maintenance of a building.

Based upon this definition, Mr. MacVean informed Dancy that "the two side yards and rear yard must be increased for the portions of the building that exceed[ed] 40 feet as measured from the average grade at the base of the building;" however, Mr. MacVean concluded that "[t]he setback from the street is not required to be increased" and that:

> Based on the drawings you have submitted the height of the building along the left side as measured from the average grade is 49'-6"3/8 inches. Since this height is 9'-6"3/8 inches over the allowed 40 feet the corresponding side yard for the portion of the building over 40 feet must be increased by at least nine and [a] half feet to 14'1/2 feet.

> Along the rear elevation your drawings indicate the proposed building height will be 49[']-11"½ inches as measured from average grade along this side of the building. This will require the rear yard to be increased by ten feet to 45 feet for the portions of the building over 40 feet.

> Along the right side of the building the drawings submitted indicate that the height of the proposed building as measured from average grade along this side is 43'-8"3/16 inches. This will require that the side yard be increased from five feet to nine for the portion of the building over 40 feet.

The drawings for the right side indicate a step back in the building elevation. The site plan and building elevations need to be revised to indicate the height and the distance from the property line to the portion of the building closest to the property line.

Although, some portions of the building exceed forty (40) feet in height, the zoning ordinance is not violated when the corresponding side and rear yards are increased accordingly. Since the corresponding side and rear yards have been increased as required your construction does not violate the maximum height requirement of the R-5 district.

Finally, Mr. MacVean noted that, "before a certificate of occupancy can be released[,] a sealed survey indicating the distances from the structure to the property lines as well as the height of the structure must be submitted" for the purpose of "verify[ing] that the site measurement[s] you have provided are correct."

On 2 April 2008, Petitioner's counsel sent an e-mail to Ms. Young inquiring about the status of the "height review." In his e-mail, Petitioner's counsel referenced his understanding that the builder would provide a "sealed survey to support the calculations he previously provided to [Mr. MacVean]." On the same date, Ms. Young responded that she had not heard anything from Dancy and would forward the final survey information to Petitioner's counsel upon receipt. On 17 April 2008, Petitioner's counsel e-mailed Ms. Young again for the purpose of inquiring whether she had received a final survey from Dancy. Ms. Young responded that Dancy had not yet provided the final survey and stated that a hold had been placed on the issuance of a certificate of occupancy that would remain in effect until the survey had been provided. In response, Petitioner's counsel stated that a survey crew had been on the site on 3-4 March 2008, that the purchasers of the home intended to move in on 1 May 2008, that he believed that Dancy "intend[ed] to provide the survey contemporaneously with the inspection for the" certificate of occupancy, and that he wished to "review and discuss the situation with [Ms. Young] once [she] receive[d] the survey." Ms. Young replied that "Mr. Dancy has been made aware of what is required in a letter sent by [Mr.] MacVean;" that "[o]nce the survey is presented and a determination is made[,] either party, if they disagree with the decision, may appeal that decision to the Board;" and that she would "be happy to provide you with a copy of the survey once it is submitted."

In May 2008, Dancy provided a sealed survey to the Planning Department. On 20 May 2008, Ms. Young sent an e-mail to Petitioner's counsel, to which a copy of the survey was attached, in which she stated that, "[b]ased on [Mr.] MacVean's letter dated February 28, 2008, the right side of the structure is also in compliance." In response, Petitioner's counsel sent an e-mail to Ms. Young in which he argued that "[t]he problem we continue to have in this matter is that the surveyor has measured the left side setback to the side of the main house structure rather than to the side of the carport/bonus room structure." In light of his belief that the use of this approach to measuring the left side setback rested on an incorrect interpretation of the applicable zoning regulation, Petitioner's counsel "request[ed] that you rescind the approval set forth in your email below and require the builder to provide the proper side setback."

On 23 May 2008, Petitioner submitted an appeal to the Board of Adjustment. At the 24 June 2008 hearing, the first issue that the parties were asked to address was the timeliness of Petitioner's appeal. At the conclusion of the proceedings, the Board of Adjustment adopted an order providing that the MacVean letter "constituted a decision regarding Code Section 9.205(1)," Petitioner's appeal was not filed within thirty days of the MacVean letter, and, as a result, it did not have jurisdiction to hear Petitioner's appeal. In light of its conclusion that Petitioner had not noted his appeal in a timely fashion, the Board of Adjustment did not reach Petitioner's substantive challenges to the Planning Department's decision.

On 23 September 2008, Petitioner filed a petition for writ of *certiorari* with the Mecklenburg County Superior Court. On 1 June 2009, a hearing was held before the trial court, which concluded that Petitioner's appeal was timely filed, that the Board had subject matter jurisdiction to hear the appeal, and that the appeal should not have been dismissed. In addition, the trial court directed the Board of Adjustment to hear Petitioner's appeal on its merits within sixty days from the date of its order. On 9 July 2009, Respondents noted an appeal to this Court from the trial court's order.

## II. Legal Analysis

On appeal, Respondents argue that the trial court erred by determining that the Board of Adjustment had subject matter jurisdiction to hear Petitioner's appeal. In essence, Respondents argue that the MacVean letter was a specific "order, requirement, decision or determination" as defined in Section 5.101(a) of the Charlotte Code and

that, since Petitioner failed to appeal the Zoning Administrator's interpretation within thirty days of 7 March 2008, which is the latest date by which Petitioner's counsel should have received the MacVean letter, Petitioner lost the right to challenge the manner in which the Planning Department applied the City's zoning ordinance to the structure located at 1562 Clayton Drive. We agree.

According to well-established principles of North Carolina law, boards of adjustment do not have subject matter jurisdiction over appeals that have not been timely filed. *Water Tower Office Assoc. v. Town of Cary Board of Adjustment*, 131 N.C. App. 696, 698, 507 S.E.2d 589, 591 (1998). The extent to which a board of adjustment has jurisdiction to hear an appeal is a question of law. *In re Soc'y for the Pres. of Historic Oakwood v. Bd. of Adjustment of Raleigh*, 153 N.C. App. 737, 740, 571 S.E.2d 588, 590 (2002). In the event that a board of adjustment decision is alleged to rest on an error of law such as an absence of jurisdiction, the reviewing court must examine the record *de novo*, as though the issue had not yet been determined. *Whiteco Outdoor Adver. v. Johnston County Bd. of Adjustment*, 132 N.C. App. 465, 470, 513 S.E.2d 70, 74 (1999).[1]

Section 3.501(12) of the Charlotte Code provides that "the Planning Director and the employees under his or her control" may "render interpretations of the provisions of [the Zoning Ordinance]."[2] Section 5.103 of the Charlotte Code specifies that "[a] notice of appeal . . . shall be properly filed by a person aggrieved with the decision of the Zoning Administrator . . . within thirty (30) days of the decision." The crux of Petitioner's argument for the right to appeal from the Zoning Administrator's decision to the Board of Adjustment is that the MacVean letter was not a final determination from which an appeal could properly be taken. In support of this argument, Petitioner points to that portion of the MacVean letter which states that, "before a certificate of occupancy can be released a sealed sur-

---

1. In view of the fact that we are required to review Respondents' challenge to the trial court's order *de novo*, Petitioner's contention that "there was no competent, material and substantial evidence on the record to support the Board's finding of fact that the [MacVean letter] was an order, requirement, decision, or determination on the matter of the height requirement" and his argument that the Board of Adjustment failed to consider various statements made in the MacVean letter and in Ms. Young's 17 April 2008 e-mail in determining whether Petitioner had noted a timely appeal need not be addressed because they rest on a misapprehension of the applicable standard of review.

2. The parties do not appear to dispute the fact that the Zoning Administrator is an employee under the control of the Planning Director and authorized to provide interpretations for purpose of Section 3.501(12) of the Charlotte Code.

vey indicating the distances from the structure to the property lines as well as the height of the structure must be submitted . . . to verify that the site measurement[s] you have provided are correct" and argues that this additional language constitutes a recognition that the MacVean letter was not a "specific order, requirement, decision, or determination made . . . by the Zoning Administrator" or his authorized designee. Furthermore, Petitioner argues that he was entitled to rely on the statement in Ms. Young's 17 April 2008 e-mail to the effect that, once "a determination is made[,] either party, if they disagree with the decision, may appeal that decision to the Board."

By his own admission, Petitioner sought an interpretation of the Zoning Ordinance as applied to the structure under construction at 1562 Clayton Drive that addressed "the noticeable height of the structure" and addressed "whether the height of the structure complied with all applicable zoning ordinances regarding maximum height . . . ." The MacVean letter explicitly dealt with the issue of whether the structure complied with the height-related requirements contained in the Charlotte zoning ordinance by explaining the methodology utilized to determine the structure's compliance "along the left side," "along the rear elevation," and "along the right side" before concluding that the "construction [did] not violate the maximum height requirement of the R-5 district." In essence, the MacVean letter amounted to an evaluation of the extent to which the structure as proposed and as described in the site plans and architectural plans submitted for review by the interim Zoning Administrator complied with the relevant provisions of the Charlotte zoning ordinance. The effect of the MacVean letter was to inform Dancy that, in the event that the structure was built as outlined in the site plans and architectural drawings, it would pass muster for zoning compliance purposes. As a result, Petitioner's contention that the determination set out in the MacVean letter was purely tentative in nature rests upon a misreading of the document in question.

Contrary to Petitioner's contention that the MacVean letter was merely "the view, opinion or belief of the administrative official," we conclude that it was a "specific order, requirement, decision, or determination" referenced in Section 5.110(1) of the Charlotte Code. Pursuant to Section 3.501(12) of the Charlotte Code, MacVean had the authority to render an official interpretation of the relevant provisions of the zoning ordinance. In addition, it is clear that Mr. MacVean was exercising that authority in the 28 February 2008 letter. For example, the subject line set out in the MacVean letter indicates that

it concerns an "Interpretation of Section 9.205(1)." At the beginning of the 28 February 2008 letter, Mr. MacVean expressly stated that "[t]he Planning Department is providing the following interpretation of Section 9.205 Development Standards for Single Family Districts." Finally, the text of the MacVean letter states, in no uncertain terms, that, despite the fact that "some portions of the building exceed forty (40) feet in height, the zoning ordinance is not violated when the corresponding side and rear yards are increased accordingly" and that, "[s]ince the corresponding side and rear yards have been increased as required[,] your construction does not violate the maximum height requirement of the R-5 district." As a result, the language of the MacVean letter is clearly couched in determinative, rather than advisory, terms, compelling the conclusion that it is an "order, decision, requirement, or determination" of the type that is subject to appeal pursuant to Section 5.110(1) of the Charlotte Code.

Although Petitioner attempts to analogize this case to *Historic Oakwood,* 153 N.C. App. at 739, 571 S.E.2d at 589, we are not persuaded that this decision is controlling. In *Historic Oakwood,* a zoning supervisor, at the request of the City Attorney, issued a memorandum stating his opinion concerning the status of a proposed building and the use to be made of that proposed building under the City of Raleigh's zoning ordinance. On appeal, this Court was required to determine whether the zoning supervisor's memorandum constituted an appealable decision. In concluding that it was not appealable, this Court looked to the document's text in order to determine whether the memorandum was an actual "decision" or "merely" an "advisory" response. *Id.* at 743, 571 S.E.2d at 591-92. At the conclusion of that process, we found that the distinguishing feature of an appealable "order, decision, or determination," as compared to an advisory opinion, was that the former "must have some binding force or effect for there to be a right of appeal under" N.C. Gen. Stat. § 160A-388(b), while the latter is "merely the view, opinion, or belief of the administrative official." *Id.* at 742-43, 571 S.E.2d at 591. Since the memorandum at issue in *Historic Oakwood* did not affect any of the parties' legal rights and was nothing more than a "response to a request" by the City Attorney, we concluded that the memorandum had no binding force and was not appealable to the board of adjustment. *Id.* The situation at issue here is very different.

Unlike the situation at issue in *Historic Oakwood,* the parties who initially sought the interpretation at issue were the builder and an adjacent property owner, both of whom had a definite interest in

the outcome of the dispute. In other words, a proper determination of the extent to which the structure complied with the applicable zoning restrictions clearly affected the rights of both parties. Furthermore, Mr. MacVean's determination that the "construction does not violate the maximum height requirement of the R-5 district" was definitive and authoritative rather than tentative. In essence, Mr. MacVean determined that, in the event that the structure was built in accordance with the site plans and architectural drawings submitted for his review, it would not violate applicable zoning restrictions. Although Petitioner is correct in arguing that the MacVean letter did not result in the issuance of a permit or certificate of occupancy, it did allow Dancy to complete construction with the assurance that, if the structure was built in substantial compliance with the site plans and architectural drawings upon which the MacVean letter was based, Dancy would not have to confront the risk that the structure as built would be found out of compliance with applicable zoning requirements. As a result, the MacVean letter, unlike the memorandum at issue in *Historic Oakwood,* involved a determination made by an official with the authority to provide definitive interpretations of the Charlotte zoning ordinance concerning the manner in which a specific provision of the zoning ordinance should be applied to a specific set of facts that was provided to parties with a clear interest in the outcome of a specific dispute. For that reason, we conclude that the MacVean letter was an "order, requirement, decision, or determination" within the meaning of Section 5.101(1) of the Charlotte Code and was subject to appeal to the Board of Adjustment.[3]

---

3. Petitioner contends that the reference to the necessity for a "sealed survey indicating the distances from the structure to the property lines as well as the height of the structure" as a precondition for obtaining a certificate of occupancy in the MacVean letter and Ms. Young's 17 April 2008 e-mail precludes the MacVean letter from being treated as an "order, requirement, decision, or determination" for purposes of Section 5.101(1). Petitioner's argument overlooks the difference between the purpose for which the interpretation set forth in the MacVean letter was provided and the reason that the "sealed survey" was required as a precondition for the issuance of a certificate of occupancy. At bottom, the purpose of the "sealed survey" requirement was to ensure that the structure was completed in accordance with the site plans and architectural drawings provided in connection with the process that led to the issuance of the interpretation embodied in the MacVean letter. In other words, the purpose of the "sealed survey" requirement was to ensure that the structure that Dancy completed had been constructed consistently with the representations that Dancy had made. Nothing about the inclusion of the "sealed survey" requirement in the MacVean letter or in Ms. Young's 17 April 2008 e-mail suggests that the Planning Department reserved the right to alter the interpretation of the relevant provisions of the zoning ordinance as set out in the MacVean letter following receipt of the "sealed survey."

Finally, Petitioner argues that he reasonably relied on the language of Ms. Young's 17 April 2008 e-mail to the effect that, "[o]nce the survey is presented and a determination is made[,] either party, if they disagree with the decision, may appeal that decision to the Board," to mean that he could appeal any disputed issue to the Board of Adjustment after the "sealed survey" had been received and reviewed by the Planning Department. Ms. Young's e-mail will not, however, bear the weight that Petitioner seeks to place on it. Instead, Ms. Young's e-mail simply states that Dancy "has been made aware of what is required" in the MacVean letter and that, "[o]nce the survey is presented and a determination is made," either party "may appeal . . . to the Board" "if they disagree with the decision." Taken in context, Ms. Young's e-mail clearly means that Dancy had been given an outline of what was expected in the MacVean letter, that the survey would reveal whether Dancy had complied with the interpretation of the relevant provisions of the zoning ordinance outlined in the MacVean letter, and that, in the event that either party disagreed with the Planning Department's determination of the extent to which the structure as actually built complied with the zoning regulations as interpreted in the MacVean letter, that issue was subject to appeal to the Board of Adjustment.[4]

In his appeal to the Board of Adjustment, Petitioner advanced two substantive arguments. First, Petitioner argued that, in her 20 May 2008 e-mail, Ms. Young "approved a measurement from the left property line to the side of the main house structure rather than to the side of the carport/bonus room structure." Secondly, Petitioner argues that "Ms. Young takes the position that the 'height' of a structure is measured to multiple points on the structure[,]" which is "clearly incorrect, as the Ordinance unambiguously states that height is measured to 'the <u>highest</u> point of the structure.'" Neither Mr. Young's 17 April 2008 e-mail nor Ms. Young's 20 May 2008 e-mail addressed the issue of how the height of a structure or side or rear setback lines should be determined under the zoning ordinance. Instead, the assertions set out in Petitioner's appeal are obvious challenges to the determinations enunciated in the MacVean letter, which

---

4. This reading of the 17 April 2008 e-mail is consistent with Ms. Young's view of what she wrote. Ms. Young clearly stated during the hearing concerning Petitioner's appeal that the 28 February 2008 letter was an interpretation letter and that the 20 May 2008 e-mail "was a compliance letter saying that, based on the information provided, it's in compliance." According to Ms. Young, "the interpretation is how we do the measurement," "[t]he compliance is, okay, based on the survey, the structure is in compliance." Ms. Young emphasized that "they're two separate departments and they're two separate issues."

**MEIER v. CITY OF CHARLOTTE**

[206 N.C. App. 471 (2010)]

clarified the manner in which the height-related provisions in the zoning ordinance would be applied to the structure and explained the methodology that would be utilized to determine that the structure complied with the relevant provisions of the zoning ordinance, rather than challenges to Ms. Young's determination that Dancy had completed the structure consistently with the interpretation of the zoning ordinance set out in the MacVean letter.[5] As a result, what Petitioner really wanted to challenge in his appeal to the Board of Adjustment was the interpretation of the zoning ordinance set out in the MacVean letter rather than the extent to which the structure had been built in accordance with the approach outlined in the MacVean letter.[6] Since Petitioner did not seek to raise the sort of issue contemplated in Ms. Young's 17 April 2008 e-mail, he is not entitled to rely on that communication to support a belated challenge to the interpretive and methodological issues addressed in the MacVean letter.

Section 5.103(1) of the Charlotte Code provides that an aggrieved party must file an appeal within thirty days of the interpretive decision. The appeal period begins to run as soon as the aggrieved party receives actual or constructive notice of the interpretative decision. *Allen v. City of Burlington*, 100 N.C. App. 615, 618-19, 397 S.E.2d 657, 660 (1990). Petitioner's counsel admitted having received the MacVean letter within one week of 28 February 2008. Thus, Petitioner should have noted his appeal from the interpretation of the relevant provisions of the zoning ordinance embodied in the MacVean letter within 30 days of 7 March 2008. Because Petitioner failed to appeal from the interpretation contained in the MacVean letter in a timely manner, we conclude that the trial court erred by ruling that the Board had subject matter jurisdiction to consider Petitioner's appeal and that this matter should be remanded for consideration of Petitioner's appeal on the merits. As a result, the trial court's order should be, and hereby is, reversed.

---

5. Although Petitioner notes in his brief that the measurements set out in the sealed survey differed from those on the site plan and architectural drawings submitted in connection with the process that led to the issuance of the MacVean letter, the fact that he does not challenge Ms. Young's determination that the information provided by the sealed survey indicated that the structure had been built in conformity with the approach outlined in the MacVean letter strongly suggests that those differences are not material.

6. Petitioner concedes as much in his brief, where he states that, "[a]fter receiving the zoning administrator's determination of May 20, 2008, Petitioner filed an appeal to the [Board of Adjustment] on May 23, 2008, objecting to the protocol utilized by the zoning administrator in determining that the structure located at 1562 Clayton was in compliance with applicable zoning ordinances."

REVERSED.

Judges JACKSON and ROBERT N. HUNTER, JR. concur.