S.T. WOOTEN CORPORATION F/K/A S.T. WOOTEN CONSTRUCTION CO., INC., PETITIONER v. BOARD OF ADJUSTMENT OF THE TOWN OF ZEBULON AND THE TOWN OF ZEBULON, RESPONDENTS .

No. COA10-515

(Filed 5 April 2011)

## Zoning— interpretation of zoning official—not timely appealed—binding

A statement by the Town's 2001 Planning Director in two letters that a proposed asphalt operation was a permitted use by right requiring only a general use permit was binding on the Town because the Town did not appeal the decision within the required thirty day period.

Appeal by Petitioner from order entered 8 March 2010 by Judge Robert H. Hobgood in Wake County Superior Court. Heard in the Court of Appeals 2 November 2010.

*Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, L.L.P., by Lacy H. Reaves, Scott A. Miskimon, and J. Mitchell Armbruster, for Petitioner-Appellant.*

*Wyrick Robbins Yates & Ponton LLP, by K. Edward Greene, Charles George, and Tobias S. Hampson, for Respondent-Appellees.*

BEASLEY, Judge.

S.T. Wooten Corporation f/k/a S.T. Wooten Construction Co., Inc. (Petitioner) appeals the superior court's order affirming the decision of the Board of Adjustment of the Town of Zebulon (Board) requiring Petitioner to apply for and obtain a special use permit to operate a permanent asphalt plant on its property located within the jurisdiction of the Town of Zebulon (Town). The central issue presented in this appeal is whether a specific statement by the Town Planning Director—that, pursuant to the Town zoning code, the proposed asphalt operation is a permitted use by right requiring only a general use permit—is an order, decision, or determination of binding force. *See Raleigh Rescue Mission, Inc. v. Board of Adjust. of City of Raleigh (In re Appeal of Soc'y for Pres. of Historic Oakwood)*, 153 N.C. App. 737, 742-43, 571 S.E.2d 588, 591 (2002). For the reasons discussed herein, we conclude that the 2001 statement of the Planning Director is a determination of binding force, and, because no objection was made to that appealable decision in a timely manner, it is binding on the Town. Therefore, we reverse and remand to the Board for further remand to the Town to allow Petitioner's operation of the asphalt plant consistent with the Town's original, binding zoning interpretation that such was a permitted use, eliminating the need for a special use permit.

Petitioner owns a 63-acre parcel of land located at 901 W. Barbee Street (the Property) within the extraterritorial jurisdiction of the Town. The Property is zoned in the "Heavy Industrial" (IH) district, and Petitioner has operated a concrete plant thereon since 1978. In 2001, Petitioner's Staff Engineer, Richard Bowen, requested a zoning determination letter from Michael Frangos, the Town's Planning Director and Land Use Administrator (LUA) at the time, as to whether Petitioner's IH-zoned Property could be used as an asphalt plant. Mr. Frangos responded by letter dated 22 August 2001, confirming the

S.T. WOOTEN CORP. v. BD. OF ADJUST. OF TOWN OF ZEBULON

[210 N.C. App. 633 (2011)]

Town's extraterritorial jurisdiction over the IH-zoned Property and stating that an asphalt plant was a permitted use within the IH district:

> In accordance with § 152.129 [of the Town's Land Use Ordinance] Permitted Uses, *clay, stone, concrete and cement processing and sale* is a use permitted by right with only a General Use Permit issued by the Zoning Administrator. It is my interpretation, as such, that *asphalt plants* fall within this description or are similar enough to be grouped together and are therefore also permitted.

The letter also advised that "prior to any construction a site plan must be reviewed by the Zebulon Technical Review Committee and construction plans must be submitted along with an application in pursuit of a building permit." The Town never appealed Mr. Frangos' interpretation, and Petitioner proceeded to obtain air quality permits from the State of North Carolina. On 20 November 2001, a representative of engineering company ENSR Consulting and Engineering (NC), Inc. wrote a letter to Mr. Frangos on behalf of Petitioner, requesting that the Town "provide a zoning consistency determination" to the North Carolina Department of Environment and Natural Resources (NCDENR), Division of Air Quality. This written "Request for Zoning Consistency Determination" explained that Petitioner was "planning to permit three hot mix asphalt (HMA) plants at a site located on Barbee Street Extension in Zebulon" and sought, pursuant to statutory requirement, a determination that the proposed asphalt facility was consistent with the Town's zoning ordinance in effect. Mr. Frangos confirmed to NCDENR's Regional Air Quality Supervisor, by letter dated 3 December 2001,[1] that Petitioner's property is zoned IH and that the proposed asphalt facility was permitted as of right:

> Please accept this letter as confirmation that the Town of Zebulon has received copies of the permit applications for S.T. Wooten Asphalt Mixing Services, LLC . . . . The site at 901 Barbee Street Extended . . . is zoned IH, Heavy Industrial. Therefore such industrial uses and their appurtenant uses are permitted by right.

Also dated 3 December 2001, a "Zoning Consistency Determination" signed by Mr. Frangos, as "Planning/Zoning Director," verified that the proposed "Hot Mix Asphalt (HMA) Plant" was "consistent with applicable zoning and subdivision ordinances."

---

1. The body of this letter, written on Town of Zebulon letterhead, indicates that copies of the letter were sent to Petitioner and Petitioner's engineering and consulting firm, ENSR.

According to Petitioner, over the next few years the company, in reliance on Mr. Frangos' 2001 zoning interpretation, obtained necessary state and local permits, including: (a) the requested air quality permits from NCDENR; (b) driveway permits from the North Carolina Department of Transportation (NCDOT); (c) all necessary building permits from Wake County; and (d) all necessary sedimentation and erosion control permits. Petitioner also spent over $300,000 improving the Property for the use of the asphalt plant, including subdividing the Property to separate the asphalt plant area from the concrete plant that had been in existence on the Barbee Street Property since 1978. Petitioner began using its Property for the operation of an asphalt plant when it was awarded an asphalt paving contract by the NCDOT on 29 April 2009. In connection therewith, Petitioner submit-ted to Wake County two commercial building permit applications—one for the portable asphalt plant itself and another for a portable office/lab trailer to be used on the Property—and a mechanical permit application for electrical work involved in the setup of a portable asphalt plant. On 27 May 2009, the Town of Zebulon Planning Department approved a zoning permit for a "Temporary Asphalt Plant" at the Property, specifying on the Zoning Permit Form that no change of use permit was required. The record also contains a certificate of occupancy issued on 4 June 2009, indicating that all permit requirements were met and occupancy was allowed. From June to October 2009, Petitioner operated a portable or temporary asphalt plant on the Property, and in September 2009, informed Mark A. Hetrick, the Town's Planning Director at that time, of its intention to replace the portable plant on the Property with a permanent asphalt plant.

On 1 October 2009, counsel for the Town notified Petitioner of Mr. Hetrick's determination that the "ultimate approval" of the proposed permanent site for an asphalt manufacturing plant was "still to be made by the Board of Commissioners by way of a Special Use Permit." Mr. Hetrick cited § 152.131 of the Town of Zebulon Land Use Ordinance, which is captioned "Permitted Uses and Specific Exclusions" and provides that

> whenever a use is proposed to be established which is not specifically listed in the table of permitted uses, but is similar to a permitted use in the district in which it is proposed to be established, then the Board of Adjustment is authorized to issue a conditional use permit . . . if it first finds that the use is indeed similar in nature to one or more of the permitted uses in that district. Provided however, that if the Land Use Administrator finds that

the use, although similar to other uses in the district, will have a greater impact on the community, then the Board of Commissioners may issue a [special use] permit . . . .

Zebulon, N.C., Zebulon Land Use Ordinance (Zebulon Ordinance) § 152.131 (2008). Petitioner appealed Mr. Hetrick's decision requiring a special use permit to the Board of Adjustment on 23 October 2009, and on 17 December 2009, the Board held a hearing on the matter. At the conclusion of the hearing, the Board voted to affirm the 2009 interpretation and deny Petitioner's appeal by a unanimous vote. Petitioner timely filed a petition for a writ of certiorari to the superior court, and after considering the whole record of proceedings before the Board, reviewing the parties' submissions, and hearing arguments from counsel, the superior court affirmed the Board's decision. Petitioner appeals.

---

Our General Assembly has authorized judicial review of the decisions of a municipal board of adjustment, providing that "[e]very decision of the board shall be subject to review by . . . proceedings in the nature of certiorari." N.C. Gen. Stat. § 160A-388(e2) (2009). A trial court reviewing a board's decision should:

"(1) review the record for errors of law; (2) ensure that procedures specified by law in both statute and ordinance are followed; (3) ensure that appropriate due process rights of the petitioner are protected, including the right to offer evidence, cross-examine witnesses, and inspect documents; (4) ensure that the decision is supported by competent, material, and substantial evidence in the whole record; and (5) ensure that the decision is not arbitrary and capricious."

*Wright v. Town of Matthews*, 177 N.C. App. 1, 8, 627 S.E.2d 650, 656 (2006) (quoting *Knight v. Town of Knightdale*, 164 N.C. App. 766, 768, 596 S.E.2d 881, 883 (2004)). " 'If a petitioner contends the Board's decision was based on an error of law, 'de novo' review is proper. However, if the petitioner contends the Board's decision was not supported by the evidence or was arbitrary and capricious, then the reviewing court must apply the 'whole record' test.' " *Sun Suites Holdings, LLC v. Board of Aldermen of Town of Garner*, 139 N.C. App. 269, 272, 533 S.E.2d 525, 527-28 (2000) (quoting *JWL Invs., Inc. v. Guilford County Bd. of Adjust.*, 133 N.C. App. 426, 429, 515 S.E.2d 715, 717 (1999)). Upon further appeal to this Court from a superior court's review of a municipal board of adjustment's decision, "[t]he

scope of our review is the same as that of the trial court." *Fantasy World, Inc. v. Greensboro Bd. of Adjust.*, 162 N.C. App. 603, 609, 592 S.E.2d 205, 209 (2004). In this Court's examination of the superior court's order for errors of law, our "standard of review is limited to '(1) determining whether the trial court exercised the appropriate scope of review and, if appropriate, (2) deciding whether the court did so properly.'" *Id.* (quoting *Westminster Homes, Inc. v. Town of Cary Zoning Bd. of Adjustment*, 140 N.C. App. 99, 102-03, 535 S.E.2d 415, 417, (2000)).

Although Petitioner's Petition for Writ of Certiorari to the superior court alleged that the Board's decision was not supported by competent, material, and substantial evidence and was arbitrary and capricious, these arguments were not properly preserved for appeal. Rather, Petitioner raises two questions of law: (1) whether the Board is bound by the 2001 interpretation of the Zebulon Ordinance because the Town took no appeal therefrom; and (2) whether such interpretation created a common law vested right in Petitioner to operate an asphalt plant on the Property. Where the order affirming the Board's decision indicates that the superior court "conducted a *de novo* review of all legal issues and determined that the decision was not based on an error of law," and Petitioner does not contend that the superior court exercised an inappropriate scope of review, we consider only whether the de novo review was conducted properly. *See Fantasy World*, 162 N.C. App. at 609, 592 S.E.2d at 609-10 ("Questions of law are to be considered by both the superior court and by this Court *de novo*.").

We first address Petitioner's argument that Mr. Frangos' 2001 interpretation—that asphalt plants are a permitted use of right within the IH district—is binding on the Town because it was never appealed. As discussed below, because the LAU's interpretation of the zoning ordinance was a final decision, it was also appealable; therefore, we agree with Petitioner that Mr. Frangos' letter became a binding zoning determination to which the Town must adhere.

In addition to various specific duties, the Zebulon Ordinance authorizes the LUA to "[a]dvise applicants for development on the merits of proposed applications as well as procedures, rights and obligations under [the Zebulon Ordinance], . . . [m]ake interpretations on the provisions [therein], and appeal to the Board of Adjustment whenever he or she is unable to make certain determinations." Zebulon Ordinance § 152.025(A)-(B). Our General Statutes provide that

the board of adjustment shall hear and decide appeals from and review any *order, requirement, decision, or determination* made by an administrative official charged with the enforcement of that ordinance. An appeal may be taken by any person aggrieved or by an officer, department, board, or bureau of the city.

N.C. Gen. Stat. § 160A-388(b) (2009) (emphasis added). The Zebulon Land Use Ordinance likewise provides that "[a]n appeal from any final order or decision of the Land Use Administrator may be taken to the Board of Adjustment by any person aggrieved." Zebulon Ordinance § 152.072(A)(1); *see also id.* § 152.024(A)(1) ("The Board of Adjustment shall hear and decide . . . [a]ppeals from any order, decision, requirement or interpretation made by the Land Use Administrator . . . ."). Pursuant to the Zebulon Ordinance, "[a]n appeal made 30 days after the date of the decision or order appealed from will be considered invalid." *Id.* § 152.072(B). Our case law has made clear that for this thirty-day clock to be triggered, "the order, decision, or determination of the administrative official must have some binding force or effect for there to be a right of appeal under [§] 160A-388(b)." *In re Historic Oakwood,* 153 N.C. App. at 742-43, 571 S.E.2d at 591. This Court explained:

> Where the decision has no binding effect, or is not "authoritative" or "a conclusion as to future action," it is merely the view, opinion, or belief of the administrative official. *See Midgette v. Pate,* 94 N.C. App. 498, 502-03, 380 S.E.2d 572, 575 (1989) (under section 160A-388(b)[.] "Once the municipal official has acted, *for example by granting or refusing a permit,* 'any person aggrieved' may appeal to the board of adjustment.") (emphasis added). We do not believe section 160A-388(b) sets forth an appellate process where no legal rights have been affected by the "order, decision . . . or determination" of the administrative official.

*Id.* at 743, 571 S.E.2d at 591.

The parties dispute the applicability of two seminal cases: while the Town attempts to analogize the instant facts to *In re Historic Oakwood,* Petitioner suggests that the case *sub judice* is more closely aligned with our recent decision in *Meier v. City of Charlotte,* —— N.C. App. ——, 698 S.E.2d 704 (2010), where we distinguished the facts of *In re Historic Oakwood* from those involved there. *See Meier,* —— N.C. App. at ——, 698 S.E.2d at 709-10 (noting that unlike *In re Historic Oakwood,* where the subject memorandum "had no binding force and was not appealable to the board of adjustment" because it

"did not affect any of the parties' legal rights and was nothing more than a 'response to a request' by the City Attorney," the pertinent language at issue in *Meier*, contained in a letter from the interim zoning administrator, was "clearly couched in determinative, rather than advisory; terms, compelling the conclusion that it is an 'order, decision, requirement, or determination' of the type that is subject to appeal" to the board of adjustment). After thorough comparison of these two cases and careful scrutiny of the letter Mr. Frangos wrote Petitioner, we are convinced that the 2001 interpretation is more similar to the actual "decision" rendered in *Meier* than the "advisory" response of *In re Historic Oakwood*.

In *In re Historic Oakwood*, the board of adjustment determined that the residential facility a charitable organization planned to build "fail[ed] to meet multi-family housing requirements because of its proposed use[,]" but this Court reversed the decision based on the board's lack of jurisdiction to hear the matter. *In re Historic Oakwood*, 153 N.C. App. at 738, 571 S.E.2d at 589. We considered a memorandum of opinion by a Zoning Inspector issued in response to an inquiry from a Deputy City Attorney as to the contentions of opposing parties in the construction of a multi-family building, where the dispute concerned local zoning provisions. No one contested that the Zoning Inspector was an appropriate administrator to render a binding order on the matter; however, we determined that the memorandum was not binding. Our Court stated that the Zoning Inspector was without decision-making power at the time he issued his memorandum; that the memorandum was advisory, as it was in response to the Deputy City Attorney's request; and that the memorandum did not affect any rights of the parties. *Id.* at 743, 571 S.E.2d at 591-92.

We distinguished *In re Historic Oakwood* from *Meier*, where an adjacent property owner asked the Zoning Administrator to determine whether a construction project complied with the zoning ordinance height requirements. Because of questions presented by both the property owner and the adjacent property owner, a hold was placed on a certificate of occupancy "until the zoning-related issues were resolved." *Id.* at ——, 698 S.E.2d at 706. The Administrator reviewed the construction site and the plans and architectural drawings concerning the structure's height and location before providing his final interpretation as to compliance with the zoning ordinance. Upon review, we held that the Administrator was exercising the authority delegated to him pursuant to the Charlotte zoning ordinance and thereby made a specific " 'order, requirement, decision, or determi-

nation within the meaning of . . . the Charlotte Code[,]" as it was a determination made by an official with the authority to provide an interpretation of a specific provision of the zoning ordinance and allowed the property owner to complete the project without the risk that the structure would later be found to be out of compliance. *Id.* at ——, 698 S.E.2d at 710. As such, the Zoning Administrator's letter "was subject to appeal to the Board of Adjustment." *Id.* at ——, 698 S.E.2d at 710.

Here, Petitioner, the landowner, specifically requested that the Planning Director interpret the Zebulon Ordinance and determine whether an asphalt plant was a permitted use. Mr. Frangos, in his capacity as Planning Director, rendered his interpretation of the zoning ordinance—that the area was zoned for Heavy Industrial and an asphalt plant was a permitted use. On at least two occasions—in the letter of 22 August 2001 and in the letter of 3 December 2001—Mr. Frangos clearly interpreted the Zebulon Ordinance to allow asphalt plants as a permitted use. Subsequently, and in accord with the Planning Director's interpretation, Petitioner made application for several permits necessary for the asphalt plant. While the record does not provide the circumstances that led to Petitioner's request, the evidence indicates that Petitioner relied on Mr. Frangos' letters as binding interpretations of the applicable zoning ordinance. Mr. Frangos, as the LUA/Planning Director, was expressly empowered by § 152.025(A)-(B) of the Zebulon Ordinance to provide formal interpretations of the zoning provisions therein, and such zoning interpretations by the LUA may be binding. Thus, unlike *In re Historic Oakwood*, where an advisory opinion was provided at the request of the City Attorney, Mr. Frangos exercised his explicit authority in providing a formal interpretation of the zoning ordinance to a landowner seeking such interpretation as it related specifically to its property.

Further, we cannot readily distinguish the facts in *Meier* from the instant case as it relates to whether certain language used by an LUA in interpreting an ordinance is binding. Like the interpretation in *Meier*, Mr. Frangos' 2001 interpretation was a determination that a certain use was permitted under the ordinance, and that the property owner, upon completion of a few items as set out in a letter, would be in compliance with the ordinance. The reasoning of the Court in *Meier*—distinguishing *In re Historic Oakwood* and concluding that the language used by the LUA was an "order, requirement, decision or determination" within the meaning of the Charlotte Code—is equally applicable to this appeal. "[U]nlike the memorandum at issue in *In re*

*Historic Oakwood,* [the letter here] involved a determination made by an official with the authority to provide definitive interpretations of the . . . zoning ordinance concerning the manner in which a specific provision of the zoning ordinance should be applied to a specific set of facts that was provided to parties with a clear interest in the outcome of a specific dispute." *Meier,* —— N.C. App. at ——, 698 S.E.2d at 710. Here, Petitioner had an interest in the outcome of the request of a zoning consistency determination, and the letter it received was a clear exercise of the LUA's authority to evaluate and determine to what extent a proposed use complied with the ordinance.

In its brief, the Town emphasizes that portion of Frangos' 2001 letter following his interpretation of the asphalt plant as a permitted use, where the Planning Director reminded Petitioner that site plans, construction plans, and building permit applications must be submitted prior to any construction. The Town suggests that this extraneous guidance rendered the 2001 interpretation advisory, as no authorization was given for Petitioner to actually operate the asphalt plant, and non-appealable as without binding force. However, this Court readily disposed of a parallel argument in *Meier,* where the petitioner contended that treatment of the Zoning Administrator's letter "as an 'order, requirement, decision, or determination' for purposes of [appeal]" was precluded by a reference therein "to the necessity for a 'sealed survey indicating the distances from the structure to the property lines as well as the height of the structure' as a precondition for obtaining a certificate of occupancy." *Id.* at —— n.3, 698 S.E.2d at 710 n.3. We separated the interpretation of binding force from the superfluous advice contained within the same letter, as the "[p]etitioner's argument overlook[ed] the difference between the purpose for which the interpretation set forth in the [Zoning Administrator's] letter was provided and the reason that the "sealed survey" was required as a precondition for the issuance of a certificate of occupancy:

> At bottom, the purpose of the "sealed survey" requirement was to ensure that the structure was completed in accordance with the site plans and architectural drawings provided in connection with the process that led to the issuance of the interpretation embodied in the . . . letter. In other words, the purpose of the "sealed survey" requirement was to ensure that the structure that [the developer] completed had been constructed consistently with the representations that [it] had made. Nothing about the inclusion of the "sealed survey" requirement . . . suggest[ed] that the Planning Department reserved the right to alter the interpretation of the

relevant provisions of the zoning ordinance as set out in the [Zoning Administrator's] letter following receipt of the "sealed survey."

*Id.* In the same vein, the fact that Mr. Frangos' letter mentioned that a building permit would be needed before Petitioner could begin construction of an asphalt plant, as expressly required in the Zebulon Ordinance, does not convert his unequivocal, zoning interpretation into an advisory opinion. This guidance to an "applicant[] for development on the . . . procedures, rights and obligations under the [ordinance]," Zebulon Ordinance § 152.025(A), which the LUA was explicitly authorized to provide, contains no intimation "that the Planning Department reserved the right to alter the interpretation of the [applicable permitted use] provisions of the zoning ordinance as set out [above] in [Mr. Fragos'] letter following receipt of the [site plans, construction plans, and building permit application]." Rather, Frangos, the LUA in 2001, made a lawful and binding determination that the asphalt plant was a permissible use and such use did not violate the Town of Zebulon Zoning Ordinance; his advice as to a different aspect of the ordinance did not make the preceding formal interpretation on a separate issue advisory; and there is nothing in the record to indicate a change to applicable provisions of the ordinance from 2001 to 2009.

While a review of our case law reveals no set of facts exactly like these in the instant case—where a LUA with statutory authority to bind the town does so and there is no objection by the town within the required 30-day statutory period—this Court's opinion in *City of Winston-Salem v. Concrete Co.*, 47 N.C. App. 405, 267 S.E.2d 569 (1980) provides further guidance. The central issue in that case was whether a zoning compliance determination had been made in 1970 which then affected the propriety of a 1976 zoning determination that the property was in violation of the ordinance. There, the Court acknowledged settled law that a town "cannot be estopped to enforce a zoning ordinance against a violator due to the conduct of a zoning official in encouraging or permitting the violation." *Id.* at 414, 267 S.E.2d at 575. However, the Court went on to grant the defendant a new trial based on the trial court's charge to the jury—a proper instruction on estoppel followed by an inaccurate statement as to the issues—deeming it prejudicial to the defendant. *Id.* at 417-18, 267 S.E.2d at 577. In *City of Winston-Salem*, because the question of "whether the zoning official with the power to do so made a determination in [one year] contrary to the determination made [several years later]" was before the jury, the answer to that question would

determine whether the city was entitled to enforce the ordinance by injunction. So, it would seem we have a similar situation here. In the instant case, the Town of Zebulon has made a prior determination through its LUA that the use of Petitioner's property for an asphalt plant is permissible. Because that prior determination was lawful and not in violation of the ordinance, the Town should not now be allowed to enforce a new interpretation of the same ordinance by injunction or otherwise.

It is clear that a Town's appeal of a decision of its LUA may be procedurally awkward. Is it plausible to believe that the LUA would issue an opinion and then advise the Town to challenge his own interpretation through an appeal to the Board of Adjustment? (Indeed, the Town's counsel·explained to the Board that "there really would not have been a reason for the [T]own to appeal it because the [T]own's planning director at the time was the one issuing the opinion.") Yet, awkward procedure notwithstanding, the statute provides for a right to appeal by the Town, and makes no exceptions to that right.[2] Because no appeal was taken from the initial 2001 decision, the window for appealing the decision has long since closed, the matter deemed settled, and the 2001 interpretation became a binding zoning determination that Petitioner may operate an asphalt plant on the Property as a permitted use. Thus, neither did the Town have authority to render a contrary decision or collaterally attack the 2001 interpretation, nor did the Board of Adjustment have jurisdiction to review the issue. As such, we need not review Petitioner's alternative contention that it had obtained common law vested rights to operate an asphalt plant without a special use permit. The judgment of the trial court should be reversed and remanded for further remand to the Board to reverse LUA Hetrick's decision that Petitioners needed a special use permit to operate the asphalt plant and to allow the original permitted use for the IH-zoned Property.

Reversed and remanded.

Judges McGEE and BRYANT concur.

---

2. *See* N.C. Gen. Stat. § 160A-388(b) (setting out the avenue of appeals from, e.g. LUA decisions by persons aggrieved or city boards, departments, etc., and specifying that "appeals from and review any order, requirement, decision, or determination made by an administrative official charged with the enforcement of that ordinance . . . may be taken by any person aggrieved or by an officer, department, board, or bureau of the city"); *see also* Zebulon Code § 152.025(A)-(B) (authorizing the LUA to "make interpretations on the provisions of [the zoning ordinance], and appeal to the Board of Adjustment whenever he or she is unable to make certain determinations").