DILLON, Judge.
 

 *385
 
 Appalachian Materials, LLC ("Appalachian Materials"), filed an application for a permit to operate an asphalt plant in Ashe County (the "County"). Its permit was initially denied by the County's Planning Director. However, the County's Planning Board reversed the Planning Director's decision, directing that the permit be issued. The County appealed the decision of its Planning Board to the superior court. The superior court affirmed the decision of the Planning Board. The County appeals to this Court. We affirm.
 

 I. Background
 

 In June 2015, Appalachian Materials submitted an application to the County, seeking a PIDO permit
 
 [1]
 
 to operate an asphalt plant on a certain tract of land. However, Appalachian Materials noted in its application that it had applied for but not yet obtained an air quality permit
 
 from the State
 
 , a permit which must be obtained before the County can issue a permit for an asphalt plant in its jurisdiction.
 
 [2]
 

 Later in June 2015, the County's Planning Director sent Appalachian Materials a letter (the "June 2015 Letter") positively commenting on the
 
 *386
 
 application, but stating that Appalachian Materials needed to provide the State-issued air quality permit before any PIDO permit could be issued.
 

 Four months later, in October 2015, Ashe County's elected Board of Commissioners (the "Governing Board") adopted a temporary
 
 *226
 
 moratorium on the issuance of PIDO permits (the "Moratorium").
 

 During the Moratorium, in February 2016, Appalachian Materials finally supplemented its PIDO permit application with the State air quality permit. But two months later, in April 2016, the Planning Director issued a letter to Appalachian Materials denying the PIDO permit request. In the denial letter, the Planning Director cited the Moratorium, among other reasons, for the denial. Appalachian Materials appealed the Planning Director's denial to the Planning Board.
 

 In the Fall of 2016, prior to the decision of the Planning Board, the County's Governing Board lifted the Moratorium, but repealed the PIDO ordinance (the "Old Ordinance") and replaced it with a new ordinance (the "New Ordinance") which created additional barriers for the approval of a permit to operate an asphalt plant.
 

 In December 2016, the Planning Board reversed the decision of the Planning Director, determining that Appalachian Materials was entitled to the PIDO permit. The County appealed the Planning Board's decision to the superior court.
 

 Almost a year later, in November 2017, Superior Court Judge Bray affirmed the Planning Board's order. The County has now appealed Judge Bray's order to our Court.
 

 II. Analysis
 

 The County's unelected Planning Board, which operates as the County's board of adjustments, voted in favor of permitting Appalachian Materials' proposed asphalt plant.
 
 See
 
 Ashe County Code § 153.04(J) (2015) (stating that the County's Planning Board acts as the County's board of adjustments). The County's elected Governing Board, however, is against the decision of its Planning Board, and is seeking a reinstatement of the decision made by its Planning Director, a County employee, denying the permit application. To better understand the issues on appeal, we pause briefly to describe the bases why the Planning Director denied the permit application and why the Planning Board reversed, voting to allow the permit application.
 

 In June 2015, Appalachian Materials applied for the permit. In October 2015, the County's Governing Board adopted its temporary
 
 *387
 
 Moratorium on permit approvals. By October 2016, the Moratorium had been lifted, the Old Ordinance was repealed, and the New Ordinance had gone into effect.
 

 However, in April 2016, while the Moratorium was still in effect, the County's Planning Director denied Appalachian Materials' application for a PIDO permit, concluding that: (1) his June 2015 Letter to Appalachian Materials, in which he positively commented on the permit application shortly after the application was submitted, did not constitute a binding decision on the County that the permit would be approved once the State permit was procured; (2) the proposed site of the asphalt plant was within one thousand (1,000) feet of certain commercial buildings, in violation of the Old Ordinance's set-back requirements; (3) Appalachian Materials' permit application was not completed when the Moratorium went into effect, as the required State permit was still pending; and (4) Appalachian Materials made misrepresentations in its application.
 

 Appalachian Materials appealed the Planning Director's denial to the County's Planning Board. The Planning Board reversed the Planning Director's conclusions and ultimate denial, itself concluding that (1) the June 2015 Letter from the Planning Director did constitute a binding determination that the permit would be approved once the State permit was procured; (2) the proposed site was
 
 not
 
 in violation of the Old Ordinance's one thousand (1,000) foot buffer; (3) Appalachian Materials' application was sufficiently completed when submitted, prior to the adoption of the Moratorium, to merit a decision under the Old Ordinance; and (4) the application did not contain misrepresentations which warranted denial.
 

 For the following reasons, we conclude that Judge Bray was correct in affirming the decision of the Planning Board.
 

 A. Appalachian Materials' Application Was Sufficiently Complete
 

 One disagreement between the parties is whether Appalachian Materials had completed its application sufficiently
 
 prior to
 
 the
 
 *227
 
 October 2015 Moratorium to trigger the statute which allows an applicant to choose which version of an ordinance to have its application considered under where the ordinance is changed before a submitted application is acted on by a county. Specifically, Section 153A-320.1 of our General Statutes, the "Permit Choice" statute, provides that "[i]f a [county's] rule or ordinance changes between the time a permit application is submitted and a permit decision is made, then G.S. 143-755 shall apply." N.C. Gen. Stat. § 153A-320.1 (2015). And Section 143-755 provides that, in such situations, "the permit applicant may choose which
 
 *388
 
 version of the rule or ordinance will apply to the permit."
 
 N.C. Gen. Stat. § 143-755
 
 (2015).
 

 We conclude that Appalachian Materials' application had been "submitted" to the County, notwithstanding that a required State permit was still under review. The required State permit is one of many possible prerequisites which might have to be met after a sufficient application is submitted but before a permit can be finally approved. Here, the application was submitted, and the County accepted and deposited the application fee. The application was still before the County when the State permit was approved. Therefore, we conclude that the application was sufficiently "submitted," pursuant to the Permit Choice statute, in June 2015.
 

 B. The Moratorium Does Not Nullify Permit Choice Rights
 

 A county has the right to adopt a temporary moratorium on certain permit approvals. N.C. Gen. Stat. § 153A-340(h) (2015). We conclude that the existence of a moratorium is not grounds to deny a permit. A moratorium simply delays the decision.
 

 The County, though, argues that when a county adopts a temporary moratorium and then modifies an ordinance, the Permit Choice statute has no application. Instead, the County contends, a pending application must be reviewed under the new ordinance once the moratorium is lifted. We understand the County's policy arguments, but we are compelled to disagree.
 

 In reaching our conclusion, we are guided in part by our Supreme Court's decision in
 
 Robins v. Hillsborough
 
 ,
 
 361 N.C. 193
 
 ,
 
 639 S.E.2d 421
 
 (2007). In that case, Mr. Robins applied for a permit to construct an asphalt plant.
 
 Id.
 
 at 194,
 
 639 S.E.2d at 422
 
 . While his application was pending, the town adopted a moratorium and then amended an ordinance which prohibited asphalt plants from operating in the town.
 
 Id.
 
 at 195-96,
 
 639 S.E.2d at 423
 
 . Our Supreme Court ruled that Mr. Robins had the right to have his application considered under the version of the town ordinance in effect when his application was filed, an ordinance which
 
 did
 
 allow asphalt plants to operate within the town, under certain conditions:
 

 We hold that when the applicable rules and ordinances are not followed by a town board, the applicant is entitled to have his application reviewed under the ordinances and procedural rules in effect as of the time he filed his application. Accordingly, [Mr. Robins] was entitled to receive a
 
 *389
 
 final determination from [the town] regarding his application and to have it assessed under the ordinance in affect when the application was filed. We express no opinion [on the application's merits], but merely that [Mr. Robins] is entitled to a decision by [the town] pursuant to the ordinance as it existed before passage of the moratorium and the amendment.
 

 Id.
 
 at 199-200,
 
 639 S.E.2d at 425
 
 .
 

 Seven years later, in 2014, the General Assembly essentially codified much of the Supreme Court's reasoning in
 
 Robins
 
 when it enacted the Permit Choice statute. Like the rule applied in
 
 Robins
 
 , there is no language in Section 153A-340(h), the moratorium statute, which prevents the Permit Choice statute from applying once the moratorium is lifted.
 

 C. The June 2015 Letter Was Only Partially Binding on the County
 

 The Planning Board concluded that the June 2015 Letter, in which the Planning Director positively commented on the application, was a determination that the application would be approved once the State permit was obtained. The Planning Board further concluded that this determination by the Planning
 
 *228
 
 Director in his June 2015 Letter became binding on the County when the County failed to appeal the June 2015 Letter within thirty (30) days.
 

 The County now argues that the June 2015 Letter has no binding effect.
 

 The record shows the following: In early June 2015, Appalachian Materials submitted its application for a PIDO permit. About a week later, an Appalachian Materials representative followed up, requesting a letter from the Planning Director regarding the application:
 

 .... A letter detailing that standards of our ordinance have been met for [our] site, with the one exception [the absence of the required State air quality permit] would be great. If you could just email that to me, it would help a great deal.
 

 That same day, the Planning Director responded by email that he would send a letter but that it would be merely his "favorable recommendation" of the application, that he still needed to see Appalachian Materials' final plans, and that he did not have the authority to provide conditional approval for the PIDO permit:
 

 *390
 
 .... I will write up a permit for the site
 
 assuming the new plans meet the requirements [of the PIDO
 
 ].
 

 Concerning the conditional approval based on getting the [required State permit],
 
 I cannot do that without approval from the Planning Board
 
 . The language in the ordinance is pretty clear, "
 
 no permit from the planning department shall be issued until [all required State and Federal] permits have been issued
 
 ."
 

 That said, I could write
 
 a favorable recommendation
 
 , or letter stating that standards of our ordinance have been met for this site, with one exception.
 

 (Emphasis in italics added.)
 

 A week later, the Planning Director sent the June 2015 Letter, which stated as follows:
 

 I have reviewed the plans you have submitted on behalf of Appalachian Materials LLC for a polluting industries permit. The proposed asphalt plant is located on Glendale School Rd, property identification number 12342-016, with no physical address.
 

 The proposed site does meets (
 
 sic
 
 ) the requirements of the Ashe County Polluting Industries Ordinance, Chapter 159 (see attached checklist). However, the county ordinance does require that all state and federal permits be in hand prior to a local permit being issued. We have on file the general NCDENR Stormwater Permit and also the Mining Permit for this site. Once we have received the NCDENR Air Quality Permit[,] our local permit can be issued for this site.
 

 If you have any questions regarding this review please let me know.
 

 [/s/ Planning Director]
 

 The June 2015 Letter enclosed the following checklist, which aligns with the "Permitting Standards" required to receive a PIDO permit under the Old Ordinance:
 
*391 *229 159.06A Fee $500.00 Paid 6/5/2015 State & Federal Permits Air Quality Permit - applied for by applicant, local permit on hold until received 159.06B Buffer Requirements 1,000 feet of a residential dwelling or commercial building 1,320 feet of any school, daycare, hospital, or nursing home facility. Verified, survey attached to permit. 159.06B1 Permanent Roads Permanent roads, used in excess of six months, within the property site shall be surfaced with a dust free material (soil cement, portland cement, bituminous concrete. To be inspected prior to final inspection. 159.06B3 Security Fence No extraction operation planned. Fence not required unless conditions change. 159.06B4 Noise Operations shall not violate noise ordinance. Ongoing inspection required.

 Our Court has held that where a planning department official makes a decision, it may be binding on the city or county if not appealed to the board of adjustments within thirty (30) days.
 
 See
 

 S.T. Wooten Corp. v. Bd. of Adjustment of
 

 Zebulon
 
 ,
 
 210 N.C. App. 633
 
 , 639,
 
 711 S.E.2d 158
 
 , 162 (2011). In determining whether a statement by a town official represents a decision binding on the County (if not appealed timely), our Court has relied upon the following factors: (1) whether the decision was made at the request of a party "with a clear interest in the outcome," such as at the request of a landowner, adjacent landowner, or builder rather than a city attorney; (2) whether the decision was made "by an official with the authority to provide definitive interpretations" of the applicable local ordinance, such as a planning director; (3) whether
 
 *392
 
 the decision reflected the official's formal and definitive interpretation of a specific ordinance's application to "a specific set of facts," such as "providing a formal interpretation of [a] zoning ordinance to a landowner seeking such interpretation as it related specifically to its property;" and (4) whether the requesting party relied on the official's letter "as binding interpretations of the applicable ... ordinance."
 
 S.T. Wooten Corp.
 
 ,
 
 210 N.C. App. at 641-42
 
 ,
 
 711 S.E.2d at 163
 
 .
 

 However, we have also held that "[w]here the decision has no binding effect, or is not 'authoritative' or 'a conclusion as to future action,' it is merely the view, opinion, or belief of the administrative official."
 
 In re Soc'y for the Pres. of Historic Oakwood v. Bd. of Adjustment of Raleigh
 
 ,
 
 153 N.C. App. 737
 
 , 743,
 
 571 S.E.2d 588
 
 , 591 (2002). Notably, a determination that is conditioned upon a future event occurring "does not convert [the official's] unequivocal ... interpretation into an advisory opinion."
 
 S.T.
 

 Wooten Corp.
 
 ,
 
 210 N.C. App. at 643
 
 ,
 
 711 S.E.2d at 164
 
 (concluding that a planning director was bound by his prior, written determination that the local zoning ordinance would permit a proposed asphalt plant pending the issuance of a prerequisite building permit).
 

 Here, based on the circumstances in which the June 2015 Letter was issued and the language of the prior email and the June 2015 Letter itself, we conclude that the Planning Director did not intend for his June 2015 Letter to be a determination that the
 
 *230
 
 permit would be issued once the State permit was obtained. But we also conclude that the June 2015 Letter did have
 
 some
 
 binding effect, as noted in the following section.
 

 D. The June 2015 Letter Binds the County With Respect to the Buffer
 

 The Old Ordinance prohibited any asphalt plant from being developed on a site within one thousand (1,000) feet of a "commercial building." Ashe County Code § 159.06(B) (2015) (repealed). The Planning Director denied the permit, in part, because the proposed site was within one thousand (1,000) feet of a portable shed, not attached to the land, used by Appalachian Materials' parent company on the same site and also within one thousand (1,000) feet of a barn on an adjacent property. The Planning Department determined that these structures were not "commercial buildings."
 

 Our review of language in an ordinance is
 
 de novo
 
 ; that is, we interpret language in an ordinance just like we interpret language in a statute.
 
 Morris Commc'ns Corp. v. City of Bessemer City Zoning Bd. of Adjustment
 
 ,
 
 365 N.C. 152
 
 , 155-56,
 
 712 S.E.2d 868
 
 , 871 (2011) ("Reviewing courts apply de novo review to alleged errors of law, including challenges to a board of adjustment's interpretation of a term in a
 
 *393
 
 municipal ordinance."). And "[z]oning ordinances should be given a fair and reasonable construction in light of ... the general structure of the Ordinance as a whole[,]" but, since zoning regulations are in "derogation of common law rights," they "should be resolved in favor of the free use of property."
 
 Yancey v. Heafner
 
 ,
 
 268 N.C. 263
 
 , 266,
 
 150 S.E.2d 440
 
 , 443 (1966).
 

 Here, there is uncontradicted evidence that the barn was owned by a neighbor who ran a business in which he harvested and sold hay and that he used the barn to store his hay inventory and to store farm equipment used to harvest hay.
 

 It may be argued that it is ambiguous whether the barn's agricultural use is a "commercial use." But it could be strongly argued that the language of the Ashe County Ordinance as a whole supports the view that the barn in question, used for an agricultural purpose which is commercial in nature (to sell farm products in the marketplace), is a "commercial" property as used in the Old Ordinance. For instance, one provision in the ordinance defines "business" as a "commercial trade ... including but not limited to ... agricultural ... and other similar trades or operations." Ashe County Code § 163.05 (2015). And a planned unit development is defined as any development that includes residential and commercial uses, without any separate delineation for agricultural uses. Ashe County Code § 156.48 (2015). The ordinances dealing with permit fees to construct buildings categorize buildings as either "one and two family dwellings," "mobile homes," and "commercial," without any separate delineation for "agricultural." Ashe County Code § 150.29 (2015).
 

 But we need not resolve whether the County's interpretation or its Planning Board's interpretation of "commercial building" as applied to the barn or the shed is correct. Rather, we conclude that the Planning Director made the determination that they were
 
 not
 
 commercial buildings in his June 2015 Letter and that his determination was binding on the County. Indeed, the record shows that these buildings were shown in the application and that the Planning Director stated in his June 2015 Letter that he had "verified" that these buildings were not a problem. Further, Appalachian Materials was prejudiced by this determination in that it could have sought a variance had the Planning Director not made the determination. Ashe County Code § 159.07(B) (2015) (repealed) (allowing applicant to seek a variance for any buffer issues).
 

 We conclude that the June 2015 Letter was not a binding determination that the permit would be issued once the State permit was obtained. But we also conclude that the table in the June 2015 Letter is indicative
 
 *394
 
 that the Planning Director was making a determination concerning the status of the buildings shown in the application to be in proximity of the proposed site.
 

 It could be argued that the rule we apply creates the likelihood of "interlocutory" appeals to a board of adjustments from decisions
 
 *231
 
 made by planning department officials. However, we are bound by our precedent. And where a county's planning department official has made an interlocutory determination that is relied upon by an applicant, to its detriment, such determination must be appealed by the county to its board of adjustments within thirty (30) days; otherwise, the determination becomes binding. Our precedent favors a policy that citizens should not suffer when they reasonably rely upon determinations made be a county official. It is, therefore, on each county to develop a process whereby it can become aware of determinations made by its own staff so that it can preserve its right to appeal such determinations, unless and until the law in this regard is changed.
 

 E. Misrepresentations in the Application
 

 The Planning Director denied the application based on other factors such as his view that Appalachian Materials made misrepresentations on its application. The Planning Board reviewed these alleged misrepresentations and determined that they were not sufficient to warrant the denial of the application. We note that, under the Ashe County Code, the Planning Board has the authority to "uphold, modif[y], or overrule[ ] in part or in its entirety" any determination made by the Planning Director. Ashe County Code § 153.04(f) (2015). Here, the Planning Board has made its determination; and we cannot say that the Planning Board has exceeded its authority to overrule the determination made by the Planning Director.
 

 IV. Conclusion
 

 The Moratorium is no longer in effect. Appalachian Materials' application must be reviewed under the Old Ordinance, as requested by Appalachian Materials. The Planning Director bound the County on the issue of whether certain buildings were each a "commercial building" as defined in the buffer provision in the Old Ordinance. The Planning Board had the authority to determine whether the application otherwise complied with the Old Ordinance. We, therefore, affirm the trial court's order affirming the decision made by the Planning Board.
 

 AFFIRMED.
 

 Judge STROUD concurs.
 

 Judge BERGER concurs by separate opinion.
 

 BERGER, Judge, concurring in separate opinion.
 

 *395
 
 I concur with the majority that the Polluting Industries Development Ordinance permit ("PIDO" or "PIDO permit") should be released to Appalachian Materials, LLC. However, because the County did not timely appeal to the Planning Board, neither the Planning Board nor the trial court had the requisite subject matter jurisdiction to review the appeal. Therefore, the trial court's order should be vacated, this matter dismissed, and the permit released to Appalachian Materials.
 

 In June 2015, Appalachian Materials submitted an application to Adam Stumb ("Stumb"), Ashe County's Planning Director, for a permit to be issued, as required under the local PIDO. This permit would authorize Appalachian Materials to operate portable asphalt equipment on a portion of its leased property in Ashe County, North Carolina. Appalachian Materials' application included the required $ 500.00 application fee and a copy of its air quality permit application, which Appalachian Materials contemporaneously submitted to the North Carolina Department of Environmental Quality ("NCDEQ"). As this air quality permit was required for a PIDO permit to be issued, Appalachian Materials further promised that it would forward a copy of the air quality permit to Stumb upon receipt from NCDEQ.
 

 Shortly after Appalachian Materials submitted its PIDO permit application, Stumb agreed to provide written confirmation as to whether Appalachian Materials' permit complied with PIDO, notwithstanding the pending air quality permit determination. Stumb's decision "was important for Appalachian [Materials] to know in order to continue to spend time, money and resources in connection with securing" another necessary permit. In response to Appalachian Materials' request, Stumb visited Appalachian Materials' property, "created and reviewed certain
 
 *232
 
 GIS maps and photographs that identified all buildings in close proximity to the [p]roperty and created certain GIS shape files identifying any buildings that required buffering or setbacks from the proposed polluting industry under [PIDO]."
 

 On June 22, 2015, Stumb sent Appalachian Materials the following letter (the "June 2015 Letter"):
 

 *396
 
 I have reviewed the plans you have submitted on behalf of Appalachian Materials LLC for a polluting industries permit. The proposed asphalt plant is located on Glendale School Rd, property identification number 12342-016, with no physical address.
 

 The proposed site does meets (sic) the requirements of the Ashe County Polluting Industries Ordinance
 
 , Chapter 159 (see attached checklist). However, the county ordinance does require that all state and federal permits be in hand prior to a local permit being
 
 issued
 
 . We have on file the general [NCDEQ] Stormwater Permit and also the Mining Permit for this site. Once we have received the [NCDEQ] Air Quality Permit[,] our local permit can be
 
 issued
 
 for this site.
 

 If you have any questions regarding this review please let me know.
 

 [Stumb's Signature]Adam StumbDirector of Planning
 

 (emphasis added). Appalachian Materials "continued to invest time, money[,] and resources into the proposed asphalt facility" after receiving the June 2015 Letter.
 

 On February 26, 2016, NCDEQ issued the outstanding air quality permit to Appalachian Materials. On February 29, 2016, Appalachian Materials forwarded a copy of its air quality permit to Stumb and requested that he issue its PIDO permit as promised. That same day, Stumb responded via email that he may need additional information from Appalachian Materials or NCDEQ before considering the request to issue the PIDO permit. After a series of communications between Stumb and Appalachian Materials, Stumb wrote a letter to Appalachian Materials on April 20, 2016 (the "April 2016 Letter"), which denied its request to issue a PIDO permit. In the April 2016 Letter, Stumb contended that "the proposed polluting industry was located with 1,000 feet of a residential dwelling unit or commercial building, in violation of [PIDO], that the [a]pplication was incomplete because Appalachian [Materials] had not obtained all necessary state and federal permits, and that Appalachian [Materials] made several false statements in the [a]pplication."
 

 *397
 
 On May 16, 2016, Appalachian Materials appealed Stumb's April 2016 Letter to the Planning Board. The Planning Board held a quasi-judicial hearing on October 6, 2016, in which Appalachian Materials argued that Stumb's June 2015 Letter was a binding determination that the County did not timely appeal. Therefore, Appalachian Materials argued that Stumb had no authority to subsequently reverse this binding decision by denying Appalachian Materials' application for a PIDO permit in the April 2016 Letter. On December 1, 2016, the Planning Board entered an order (the "Planning Board's Order"), in which the Planning Board unanimously reversed the April 2016 Letter; concluded that Appalachian Materials had satisfied all the requirements of PIDO; classified the June 2015 Letter as a binding and final determination; and found "no basis for any other allegation made by Stumb in his April 2016 Letter that any material misrepresentation was made in the [a]pplication," and ordered Stumb to release the PIDO permit to Appalachian Materials.
 

 The County appealed from the Planning Board's Order by filing a petition for writ of certiorari with in Ashe County Superior Court on December 30, 2016. On November 30, 2017, the superior court entered an order (the "Superior Court's Order"), affirming the Planning Board's Order in all respects and ordering the County to issue a PIDO permit to Appalachian Material within ten business days.
 

 On December 7, 2017, the County filed a motion with the superior court to stay its order. However, the County did not calendar the motion, therefore no stay has been entered. Moreover, the County failed to comply with the Superior Court's Order because it
 
 *233
 
 transferred custody of Appalachian Materials' PIDO permit to the superior court rather than issuing the PIDO permit directly to Appalachian Materials.
 

 The County timely appealed the Superior Court's Order to this Court, arguing,
 
 inter alia
 
 , that the superior court erred by concluding that the June 2015 Letter was a final, binding determination. Because the June 2015 Letter was a final determination that the County did not timely appeal to the Planning Board, the Planning Board and superior court lacked the requisite subject matter jurisdiction to review this matter. Accordingly, the trial court's order should be vacated and the PIDO permit should be released to Appalachian Materials.
 

 It is well settled in North Carolina that
 

 boards of adjustment do not have subject matter jurisdiction over appeals that have not been timely filed
 
 . The extent to which a board of adjustment has jurisdiction
 
 *398
 
 to hear an appeal is a question of law. In the event that a board of adjustment decision is alleged to rest on an error of law such as an absence of jurisdiction, the reviewing court must examine the record
 
 de novo
 
 , as though the issue had not yet been determined.
 

 Meier v. City of Charlotte
 
 ,
 
 206 N.C. App. 471
 
 , 476,
 
 698 S.E.2d 704
 
 , 708 (2010) (citations omitted) (emphasis added). "Upon further appeal to this Court from a superior court's review of a municipal board of adjustment's decision, the scope of our review is the same as that of the trial court."
 
 S.T. Wooten Corp. v. Bd. of Adjustment of Zebulon
 
 ,
 
 210 N.C. App. 633
 
 , 637-38,
 
 711 S.E.2d 158
 
 , 161 (2011) (
 
 purgandum
 
 ).
 

 Section 153.04(J) of the Ashe County Code of Ordinances states:
 

 The Planning Board shall act as the Board of Adjustment for all land usage ordinances in the Ashe County Code of Ordinances (Title XV: Land Usage). The Board shall act and hold hearings in accordance with G.S. § 153A-345.1 entitled Planning Boards. Each hearing shall follow rules applied to quasi-judicial proceedings. Each decision shall be based upon competent, material, and substantial evidence noted in the record of the proceeding.
 

 Ashe County Code § 153.04(J) (2019).
 

 Section 153A-345.1(a) of the North Carolina General Statutes dictates that "[t]he provisions of G.S. 160A-388 are applicable to the counties." N.C. Gen. Stat. § 153A-345.1(a) (2017). In relevant part, Section 160A-388 states:
 

 (a1)
 
 Provisions of Ordinance
 
 . - The zoning or unified development ordinance may provide that the board of adjustment hear and decide special and conditional use permits, requests for variances, and appeals of decisions of administrative officials charged with enforcement of the ordinance. As used in this section, the term "decision" includes any final and binding order, requirement, or determination. The board of adjustment shall follow quasi-judicial procedures when deciding appeals and requests for variances and special and conditional use permits. The board shall hear and decide all matters upon which it is required to pass under any statute or ordinance that regulates land use or development.
 

 N.C. Gen. Stat. § 160A-388(a1) (2017).
 

 *399
 
 Aligning with Section 160A-388(b1), Section 153.04(J)(3) of the Ashe County Code states, in relevant part:
 

 The Planning Board shall hear and decide appeals from decisions of Planning Department officials charged with enforcement of the development ordinances and may hear appeals arising out of any other ordinance that regulates land use, subject to all of the following:
 

 (a) Any person who is directly affected may appeal a decision to the Planning Board. An appeal is taken by filing a notice of appeal with the clerk to the Board. The notice of appeal shall state the grounds for appeal.
 

 (b) A county administrative official who has made a decision from which someone wishes to appeal shall give written notice to the owner of the property that is the subject of the decision and to the party who sought the decision, if different from the owner. The written notice shall be
 
 *234
 
 delivered by personal delivery, electronic mail, or by first class mail.
 

 (c) The owner or other party shall have 30 days from receipt of the written notice within which to file an appeal. Any other person with standing to appeal shall have 30 days from receipt from any source of actual or constructive notice of the decision within which to file an appeal.
 

 Ashe County Code § 153.04(J)(3).
 

 Simply stated, to appeal a decision made by an Ashe County Planning Department official, a petitioner must (1) have standing and (2) file the appeal within 30 days after receiving actual or constructive notice of the official's binding decision. "Our case law has made clear that for this thirty-day [notice of appeal] clock to be triggered, the order, decision, or determination of the administrative official must have some binding force or effect for there to be a right to appeal ...."
 
 S.T. Wooten Corp.
 

 210 N.C. App. at 639
 
 ,
 
 711 S.E.2d at 162
 
 (citation and quotation marks omitted). "Where the decision has no binding effect, or is not 'authoritative' or 'a conclusion as to future action,' it is merely the view, opinion, or belief of the administrative official."
 
 In re Soc'y for the Pres. of Historic Oakwood v. Bd. of Adjust. of Raleigh
 
 ,
 
 153 N.C. App. 737
 
 , 743,
 
 571 S.E.2d 588
 
 , 591 (2002). Notably, a determination that is conditioned upon a future event occurring "does not convert [the official's] unequivocal ... interpretation into an advisory opinion."
 
 S.T. Wooten Corp.
 
 ,
 
 210 N.C. App. at 643
 
 ,
 
 711 S.E.2d at 164
 
 (concluding that a planning director
 
 *400
 
 was bound by his prior, written determination that the local zoning ordinance would permit a proposed asphalt plant pending the issuance of a prerequisite building permit).
 

 When assessing whether a letter from an administrative official represents the official's binding and appealable decision, this Court has previously relied upon the following factors: (1) whether the decision was made at the request of a party "with a clear interest in the outcome," such as at the request of a landowner, adjacent landowner, or builder rather than a city attorney; (2) whether the decision was made "by an official with the authority to provide definitive interpretations" of the applicable local ordinance, such as a Planning Director; (3) whether the decision reflected the official's formal and definitive interpretation of a specific ordinance's application to "a specific set of facts," such as "providing a formal interpretation of the zoning ordinance to a landowner seeking such interpretation as it related specifically to its property"; and (4) whether the requesting party relied on the official's letter "as binding interpretations of the applicable ... ordinance."
 
 Id.
 
 at 641-42,
 
 711 S.E.2d at 163
 
 .
 

 Here, the parties do not dispute standing, and it is uncontested that the County did not timely appeal Stumb's June 2015 letter. Rather, the crux of this appeal is whether Stumb's June 2015 Letter served as a final determination binding the County to issue Appalachian Materials a PIDO permit.
 

 Applying the above-mentioned factors, it is clear that (1) Stumb issued the June 2015 Letter to Appalachian Materials who, as the lessee of the disputed property and owner of the proposed asphalt plant, had a "clear interest" in whether Stumb concluded that its permit application complied with PIDO; (2) Stumb, as Ashe County's Planning Director, had the authority to issue PIDO permits and determine whether Appalachian Materials' permit application complied with PIDO; (3) the June 2015 Letter reflected Stumb's formal and definitive interpretation that Appalachian Materials' permit application complied with PIDO; and (4) Appalachian Materials relied on Stumb's June 2015 Letter as a binding decision that its application had been approved and that the PIDO permit would be issued once the air quality permit was obtained. Accordingly, the June 2015 Letter represented a binding determination that was subject to appeal to the Planning Board per N.C. Gen. Stat. § 160A-388(a1) and Ashe County Code § 153.04(J)(3).
 

 Therefore, the County was required to voice any objection to the June 2015 Letter by noticing appeal within the requisite 30-day
 
 *401
 
 period per N.C. Gen. Stat. § 160A-388(b1)(3) and Ashe County Code § 153.04(J)(3)(c). Because the County did not timely appeal from the June 2015 Letter, both the Planning Board and the superior court lacked subject matter jurisdiction to reconsider whether Appalachian
 
 *235
 
 Materials' application complied with PIDO.
 
 See
 

 Meier
 
 ,
 
 206 N.C. App. at 476
 
 ,
 
 698 S.E.2d at 708
 
 ("[B]oards of adjustment do not have subject matter jurisdiction over appeals that have not been timely filed."). Absent a timely appeal, the June 2015 Letter bound the County to release the PIDO permit to Appalachian Materials once a copy of the outstanding air quality permit was forwarded to Stumb on February 29, 2016.
 

 Because neither the Planning Board nor the trial court had subject matter jurisdiction, the order should be vacated, this matter dismissed, and the PIDO permit released to Appalachian Materials.
 

 [1]
 

 A permit issued under Ashe County's then-existing Polluting Industries Development Ordinances.
 

 [2]
 

 See
 

 S.T. Wooten v. Zebulon Bd. of Adjustment
 
 ,
 
 210 N.C. App. 633
 
 , 635,
 
 711 S.E.2d 158
 
 , 159 (2011) (Judge, now Chief Justice, Beasley, writing for our Court, commenting on an asphalt plant operator applicant obtaining a State-issued air quality permit as a precursor to obtaining a permit from the town).