IN THE SUPREME COURT OF NORTH CAROLINA

No. 249PA19

Filed 18 December 2020

ASHE COUNTY, NORTH CAROLINA

v.

ASHE COUNTY PLANNING BOARD and APPALACHIAN MATERIALS, LLC

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 265 N.C. App. 384, 829 S.E.2d 224 (2019), affirming an order entered on 30 November 2017 by Judge Susan E. Bray in Superior Court, Ashe County. Heard in the Supreme Court on 1 September 2020.

*Womble Bond Dickinson (US) LLP, by Amy C. O'Neal and John C. Cooke, for petitioner-appellant.*

*Moffatt & Moffatt, PLLC, by Tyler R. Moffatt, for respondent-appellee Appalachian Materials, LLC.*

*No brief for respondent-appellee Ashe County Planning Board.*

*Law Offices of F. Bryan Brice, Jr., by F. Bryan Brice, Jr., and David E. Sloan, for Blue Ridge Environmental Defense League and its chapter, Protect Our Fresh Air, amicus curiae.*

*Teague Campbell Dennis & Gorham, LLP, by Natalia K. Isenberg, for the North Carolina Association of County Commissioners, amicus curiae.*

ERVIN, Justice.

This case involves a dispute between petitioner Ashe County Board of Commissioners (Ashe County) and respondents Ashe County Planning Board and Appalachian Materials, LLC, arising from Appalachian Materials' application for the

issuance of a permit pursuant to Ashe County's Polluting Industries Development Ordinance authorizing Appalachian Materials to operate a portable asphalt production facility on a thirty-acre tract of property located in Ashe County. After careful consideration of the legal issues that have been presented for our consideration in light of the record and the applicable law, we reverse the decision of the Court of Appeals, in part, and remand this case to the Court of Appeals for further proceeding not inconsistent with this opinion.

## I. Factual Background

In 1999, Ashe County adopted the Polluting Industries Development Ordinance (PID Ordinance), Chapter 159 of the Ashe County Code, for the purpose of "allow[ing] for the placement and growth of polluting industrial activities, while maintaining the health, safety and general welfare" "of its citizens and the peace and dignity of [Ashe County]." The PID Ordinance established a single permit system administered by the Ashe County Planning Department, which, following the submission of an application to the Planning Department, reviewed the application for the purpose of determining whether it satisfied the permitting requirements set out in PID Ordinance § 159.06(A)–(B). Among other things, the PID Ordinance required that: (1) the applicant pay a $500 uniform permit fee; (2) the applicant have obtained all necessary federal and state permits; (3) the polluting industry not be located within 1,000 feet of a residential dwelling unit or commercial building; and (4) the polluting industry not be located within 1,320 feet of a school, daycare,

hospital, or nursing home facility. PID Ordinance § 159.06(A)–(B). In its Planning Ordinance, Chapter 153 of the Ashe County Code of Ordinances, the Ashe County Commission vested the Planning Board with the authority to act as its Board of Adjustment pursuant to Planning Ordinance § 153.04(J) and to serve as the body responsible for handling administrative appeals from the Planning Director's decisions pursuant to N.C.G.S. § 160A-388(b1)(1) (stating that "[t]he board of adjustment . . . may hear appeals arising out of any . . . ordinance that regulates land use or development" and that "[a]ny person who has standing under [N.C.G.S. §] 160A-393(d) or the city may appeal a decision to the board of adjustment").

In early June 2015, Appalachian Materials submitted an application and the accompanying $500 application fee to the Planning Director for the purpose of seeking the issuance of a permit authorizing it to construct and operate an asphalt plant, as required by the PID Ordinance. At the time that it submitted its application, Appalachian Materials had not yet obtained an air quality permit from the North Carolina Department of Environmental Quality as required by the PID Ordinance. As a result, Appalachian Materials attached a copy of the air quality permit application that it had submitted to DEQ to its application and informed the Planning Director that, once it had obtained the required air quality permit from DEQ, it would forward a copy to the Planning Director. Ashe County deposited Appalachian Materials' check.

On 12 June 2015, the Planning Director informed Appalachian Materials that the requested permit could not be issued until Appalachian Materials had obtained its air quality permit and that Appalachian Materials would need to submit a request for the issuance of a permit as required by Ashe County's Watershed Protection Ordinance, Ashe County Code § 155.37. At that point, Appalachian Materials inquired if the Planning Director could "issue the permit with a condition that all other required permits need to be obtained prior to the start of operation." In response, the Planning Director stated that he lacked the authority to issue the requested permit without authorization from the Planning Board given that "[t]he language in the ordinance is pretty clear." On the other hand, the Planning Director stated that he could "write a favorable recommendation, or [a] letter stating that standards of our ordinance have been met for this site, with the one exception." Appalachian Materials accepted the Planning Director's offer to provide such a letter.

On 22 June 2015, the Planning Director sent Appalachian Materials a letter setting out the results of his evaluation of the permit application in which he stated that "[t]he proposed site does meet[ ] the requirements of the Ashe County [PID Ordinance]" and that, "[o]nce we have received the [a]ir [q]uality [p]ermit," "our local permit can be issued for this site." Attached to the Planning Director's letter was a chart which set out the results of the Planning Director's review of Appalachian Materials' compliance with the remaining provisions of the PID Ordinance and which indicated that Appalachian Materials had satisfied all of the requirements of the PID

Ordinance except for the provision requiring the obtaining of an air quality permit. As a result, Appalachian Materials continued to invest time, money, and resources in the proposed asphalt facility.

At some point after the transmission of the Planning Director's letter, various Ashe County citizens raised questions and expressed concerns about the appropriateness of the location for the proposed asphalt facility. On 19 October 2015, Ashe County adopted a temporary moratorium relating to the issuance of PID Ordinance permits which was to be in effect from 19 October 2015 to 19 April 2016, subject to the possibility of an extension for an additional six months.

On 28 August 2015, a staff report was released by the Ashe County Planning Department indicating that Appalachian Materials' application was incomplete. On 31 August 2015, Appalachian Materials contacted the Planning Director for the purpose of stating that the information contained in the staff report was "surpris[ing]" and asking what was missing from the application. At that time, Appalachian Materials referred to the 22 June 2015 letter as a "decision" that Appalachian Materials had satisfied the requirements of the PID Ordinance; stated that, "[a]t no point over the past two months [had the Planning Director] indicated to [Appalachian Materials] that the application was 'incomplete'"; and contended that "nothing in the [PID Ordinance] requires [that] the [air quality permit] be issued prior to a [PID Ordinance] application being submitted to [Ashe County]." In response, the Planning Director informed Appalachian Materials that, "[w]ithout the

[air quality permit,] the application is incomplete" and that, while Appalachian Materials' application may have shown that it had satisfied "some of the requirements" of the PID Ordinance, "without [the air quality permit,] [the] application is still incomplete," citing PID Ordinance § 159.06.

On 29 February 2016, Appalachian Materials forwarded its newly issued air quality permit to the Planning Director and requested that Appalachian Materials' application be "issued immediately" given its "good faith . . . reli[ance]" upon the "decision" embodied in the 22 June 2015 letter. According to Appalachian Materials, Ashe County was required to review and decide the issues raised by its application in accordance with the ordinances that were in effect at the time of filing, despite the existing moratorium, pursuant to N.C.G.S. § 153A-320.1 (providing that, "[i]f a rule or ordinance is amended . . . between the time a development permit application is submitted and a development permit decision is made . . . then [N.C.G.S. §] 143-755 shall apply") and N.C.G.S. § 143-755(a) (stating that, if an "applicant submits a permit application for any type of development and a rule or ordinance is amended . . . between the time [that] the development permit application was submitted and a development permit decision is made, the . . . applicant may choose which adopted version of the rule or ordinance will apply") (collectively, the permit choice statutes); that any changes to the applicable ordinances that had been adopted during the moratorium period would be "immaterial"; and that any failure to issue the requested permit would constitute "a violation of Chapter 159, North Carolina law and

[Appalachian Materials'] constitutional rights and would subject [Ashe County] to claims for damages and attorneys' fees." In response, the Planning Director indicated that he would "take [this information] under consideration" and that Ashe County might need "additional information" before the permit could be issued. On two subsequent occasions, Appalachian Materials asked the Planning Director "what additional information [was] needed" without receiving an answer.

On 21 March 2016, Appalachian Materials informed Ashe County's counsel that, in the event that Ashe County did not issue the requested permit by 28 March 2016, Appalachian Materials would institute legal action against Ashe County. On 4 April 2016, Ashe County extended the existing moratorium for an additional six months.

On 20 April 2016, the Planning Director denied Appalachian Materials' permit application on the grounds that: (1) the proposed plant site was located within 1,000 feet of commercial and residential buildings in violation of the applicable setback requirements and that Appalachian Materials' application had falsely represented that the proposed asphalt operation would be contained within the "limits" as shown on certain plans attached to the application; (2) the application had been incomplete at the time that the moratorium went into effect given that "Appalachian Materials did not have all necessary permits" at that time, so that the application had "not [been] properly submitted for consideration" at that time; (3) the application "contained a number of false statements, misleading statements, and/or

misrepresentations" pertaining to compliance with the setback requirements, the length of time that it would take Appalachian Materials to obtain the air quality permit, whether grading and terracing had occurred at the site in the absence of the necessary watershed permit, and the amount of asphalt that would be produced at the proposed facility; and (4) the 22 June 2015 letter had not been "a decision of any kind," "did not make a definite statement about what action would be taken on the application," and "cannot be binding" given that "it was procured by Appalachian Materials based on false information and[/]or material misrepresentations."

On 26 April 2016, Appalachian Materials contacted the Planning Director in order to request, for the third time, that he clarify what additional information was needed given that the denial letter had "fail[ed] to identify with particularity what permits have not been issued." The Planning Director responded by directing Appalachian Materials' attention to the section of the denial letter that addressed the alleged deficiencies in the application. Subsequently, Appalachian Materials reiterated its request for a specification of "what [was] missing from [its] application or what additional information [was] needed" and asked "What are the appropriate [f]ederal and [s]tate permits that you are contending have not been issued?" In response, the Planning Director referenced the portion of the denial letter asserting that Appalachian Materials had conducted grading and terracing operations at the site without having obtained the issuance of the necessary watershed permit.

On 5 May 2016, Appalachian Materials asked the Planning Director to confirm that the missing permits mentioned in the denial letter only related to the watershed permit and requested that the Planning Director specify the portion of the proposed asphalt operation that violated the applicable setback requirements. In response, the Planning Director stated that "[t]he watershed permit was one permit of several required" and that "[n]either the watershed permit nor the air quality permit had been issued prior to the establishment of the moratorium" and listed the equipment that the Planning Director believed to have violated the applicable setback requirements and which he asserted had not been disclosed in the application.

On 16 May 2016, Appalachian Materials sent an e-mail to the Planning Director stating that it had obtained the necessary air quality permit; that watershed permits are locally issued, rather than federally-issued or state-issued permits; that Appalachian Materials had applied for a watershed permit; and that the Planning Director had previously advised Appalachian Materials that the watershed permit would not be issued until the PID Ordinance permit had been released. In light of this understanding, Appalachian Materials asserted that the Planning Director had "not identified any state or federal permits, which are required by the [PID Ordinance] and are lacking from [Appalachian Materials'] [PID Ordinance] application." On the same day, Appalachian Materials noted an appeal from the denial of its permit application to the Ashe County Planning Board on the basis of a number of contentions, including the assertion that, "where there is an

[i]nterpretation by an ordinance administrator, the decision is binding, unless appealed," citing *S.T. Wooten Corp. v. Board of Adjustment of Zebulon*, 210 N.C. App. 633, 711 S.E.2d 158 (2011), with the Planning Director's 22 June 2015 letter alleged to have constituted a binding "decision" upon which Appalachian Materials had relied and which was immediately appealable.

On 26 May 2016, Appalachian Materials informed the Planning Director that the basis for his claim that Appalachian Materials had made material misrepresentations relating to the applicable setback requirements stemmed from a scrivener's error made by DEQ and that DEQ had since corrected this error and issued a memo explaining its mistake. As a result, Appalachian Materials asserted that the alleged misrepresentations provided no "basis [for the Planning Director's] refusal to issue" the requested permit.

On 3 October 2016, following the lifting of the moratorium, Ashe County repealed the PID Ordinance and adopted the High Impact Land Use Ordinance, Chapter 166 of the Ashe County Code of Ordinances, which created additional requirements applicable to applications for the issuance of permits authorizing the construction and operation of asphalt plants. On 1 December 2016, the Planning Board filed a decision addressing the issues raised by Appalachian Materials' appeal in which it concluded that: (1) the application should have been reviewed pursuant to the ordinance that was in effect at the time that the application had been submitted in accordance with the permit choice statutes and that the moratorium had "no

impact" upon the status of Appalachian Materials' application; (2) the 22 June 2015 letter constituted a "final, binding determination that [Appalachian Materials'] proposed plans for the asphalt plant met the requirements for issuance of the [PID Ordinance] permit, the one exception being receipt of [a DEQ] air quality permit," citing *Meier v. City of Charlotte*, 206 N.C. App. 471, 698 S.E.2d 704 (2010), and *S.T. Wooten Corp.*; and (3) that Appalachian Materials had, in fact, satisfied all of the requirements for the issuance of a PID Ordinance permit. The Planning Board added that, "[e]ven if the [22 June 2015 letter] was not a binding, final determination that [Appalachian Materials'] plans for a proposed asphalt plant met the requirements for a [PID Ordinance] permit," Appalachian Materials was "entitled to issuance of the [requested] permit, contrary to the grounds stated in the [denial letter]." In concluding that the application satisfied the applicable setback requirements, the Planning Board noted that, "in the absence of a definition" of the term "commercial building," it had "look[ed] to the plain meaning of the language used in the [PID Ordinance]," citing *Four Seasons Management Services v. Town of Wrightsville Beach*, 205 N.C. App. 65, 77, 695 S.E.2d 456, 463 (2010); that the use of the term " 'building' . . . generally connotes some degree of permanence," citing *Kroger Ltd. Partnership I v. Guastello*, 177 N.C. App. 386, 390–91, 628 S.E.2d 841, 844 (2006); that the term " 'commercial' . . . generally includes activity 'connected with trade or commerce in general; occupied with business,' or having financial profit as its primary aim," quoting *Aetna Casualty & Surety Co. v. Fields*, 105 N.C. App. 563, 567, 414

S.E.2d 69, 72 (1992); and that the term "commercial building" as used in the PID Ordinance "means a permanent structure used with financial profit as a significant, if not primary, purpose." In view of the fact that neither of the buildings that the Planning Director had determined to be within 1,000 feet of the applicable setback requirements, which included a barn owned by an adjacent property owner and a shed owned by Appalachian Materials' parent company, satisfied this definition, the Planning Board determined that neither structure was protected by the PID Ordinance. Finally, the Planning Board noted that the watershed permit was "a local permit issued by [Ashe County], under [an Ashe County] ordinance" that was "not encompassed by the [PID Ordinance's] requirement that all appropriate federal and [s]tate permits be obtained," so that "[t]he lack of a [w]atershed [p]ermit [did] not provide grounds for denial of [the] permit [a]pplication." As a result, the Planning Board reversed the Planning Director's decision and ordered that a PID Ordinance permit be issued to Appalachian Materials.[1]

On 30 December 2016, Ashe County filed a petition seeking the issuance of a writ of certiorari in the Superior Court, Ashe County, for the purpose of obtaining judicial review of the Planning Board's decision. On 30 November 2017, the trial court entered an order determining, among other things, that: (1) the Planning Board

---

[1] In early April 2016, Appalachian Materials filed a petition seeking the issuance of a writ of mandamus compelling the Planning Director to issue the requested permit accompanied by a request for declaratory judgment in its favor in the Superior Court, Ashe County. According to Ashe County's brief, Appalachian Materials voluntarily dismissed this petition following the entry of the Planning Board's 1 December 2016 order.

had correctly determined that Appalachian Materials' application should be reviewed pursuant to the PID Ordinance as it existed at the time that the application had been submitted; (2) the Planning Board had correctly treated the 22 June 2015 letter as a binding determination that the application satisfied the relevant ordinance requirements, with the exception of the issuance of required federal and state permits; (3) the Planning Board had correctly determined that the barn and shed that were within 1,000 feet of the proposed asphalt plant were not "commercial buildings" for purposes of the PID Ordinance; (4) the Planning Board's decision to order the issuance of the PID Ordinance permit had not been arbitrary or capricious; and (5) the Planning Board's order should be affirmed. As a result, the trial court ordered Ashe County to issue the requested permit within ten business days. Ashe County noted an appeal to the Court of Appeals from the trial court's order.

In seeking relief from the trial court's order before the Court of Appeals, Ashe County argued, in pertinent part, that: (1) the trial court had erred by determining that the moratorium did not provide a valid reason for refusing to issue the requested permit; (2) the permit choice statutes do not apply to situations in which a local government adopts a temporary moratorium and then modifies the applicable ordinance; (3) the 22 June 2015 letter did not constitute a binding decision given that Appalachian Materials had not submitted a complete permit application; (4) the Planning Board had exceeded its authority by reversing the Planning Director's denial decision and ordering the issuance of the requested permit; and (5) the

Planning Board's determination that neither the barn nor the shed constituted commercial buildings pursuant to the PID Ordinance was erroneous.

In rejecting Ashe County's challenges to the trial court's decision, the Court of Appeals held that, in spite of the fact that the air quality permit application was still under review by DEQ at the time that the PID Ordinance permit application had been presented to the Planning Director, the PID Ordinance application had been sufficiently "submitted" for purposes of the permit choice statutes given that the issuance of an air quality permit was simply one of a number of prerequisites for the approval of the PID Ordinance application and that Ashe County had accepted and deposited Appalachian Materials' application fee. *Ashe Cnty. v. Ashe Cnty. Plan. Bd.*, 265 N.C. App. 384, 388, 829 S.E.2d 224, 227 (2019). In addition, the Court of Appeals determined that the moratorium did not "nullify" Appalachian Materials' rights under the permit choice statutes and did not provide the Planning Director with a valid basis to deny the permit application, citing *Robins v. Hillsborough*, 361 N.C. 193, 199, 639 S.E.2d 421, 425 (2007) (holding that, when a permit applicant submitted an application seeking authorization to construct an asphalt plant and the relevant municipality subsequently adopted a moratorium concerning the construction and operation of asphalt plants, the "applicant [was] entitled to have his application reviewed under the ordinances and procedural rules in effect as of the time he filed his application"). *Ashe Cnty.*, 265 N.C. App. at 388, 829 S.E.2d at 227. In the Court of Appeals' view, the approach adopted in *Robins* had been codified by

the General Assembly in the permit choice statutes, with nothing in N.C.G.S. § 153A-340(h) (providing that "counties may adopt temporary moratoria on any county development approval required by law")[2] serving to prevent the application of the permit choice statute following the lifting of any applicable moratorium. *Id.* at 389, 829 S.E.2d at 227. As a result, the Court of Appeals concluded that Appalachian Materials was entitled to have its application reviewed pursuant to the PID Ordinance, which was in effect at the time that its application had been submitted. *Id.* at 394, 829 S.E.2d at 231.

In concluding that the Planning Director did not intend for the 22 June 2015 letter to be a binding determination that the requested Ordinance permit would be issued once the necessary air quality permit had been received, the Court of Appeals utilized a test developed in *S.T. Wooten Corp.* for the purpose of determining whether a statement by a town official constituted a binding decision that was subject to further review:

> (1) Whether the decision was made at the request of a party, "with a clear interest in the outcome," . . . (2) Whether the decision was made "by an official with the authority to provide definitive interpretations" of the applicable local ordinance, such as a planning director; (3) whether the decision reflected the official's formal and definitive

---

[2] The moratorium statute, in relevant part, expressly: (1) enables the adoption of a temporary moratorium for a "reasonable" amount of time; (2) establishes a uniform procedure for the adoption of a moratorium; (3) limits the scope of a moratorium to non-residential development; (4) establishes exemptions from the effect of a moratorium; and (5) provides a specific remedy through which "any person aggrieved" by a moratorium can seek an expedited review of the "imposition of a moratorium." N.C.G.S. § 153A-340(h) (2019) (repealed 2020).

> interpretation of a specific ordinance's application to "a specific set of facts," . . . and (4) whether the requesting party relied on the official's letter "as binding interpretations of the applicable . . . ordinance."

*Ashe Cnty.*, 265 N.C. App. at 391–92, 829 S.E.2d at 229 (quoting *S.T. Wooten Corp.*, 210 N.C. App. at 641–42, 711 S.E.2d at 163). The Court of Appeals held that, given the language in which it was couched and the circumstances under which it was written, the 22 June 2015 letter did not constitute a final determination. *Id.* at 392, 829 S.E.2d at 229. On the other hand, the Court of Appeals also held that the 22 June 2015 letter "did have *some* binding effect" with respect to the issue of whether the proposed asphalt plant violated the setback requirements contained in the existing version of the PID Ordinance and that, unless such a decision had been appealed within thirty days following the date upon which it had been made, that decision became binding upon the parties, including Ashe County, regardless of its interlocutory nature, with Ashe County being obligated to develop a process by virtue of which it could become aware of such decisions and appeal them. *Id.* at 394, 829 S.E.2d at 231.

Finally, the Court of Appeals determined that, despite the Planning Director's assertion that Appalachian Materials' application contained multiple misrepresentations, the Planning Board did not exceed its authority by overturning the Planning Director's denial decision. *Id.* As a result, for all of these reasons, the

Court of Appeals affirmed the challenged trial court order.[3] *Id.* On 30 October 2019, this Court allowed Ashe County's petition for discretionary review of the Court of Appeals' decision.

## II. Substantive Legal Analysis

## A. Standard of Review

The General Assembly has provided that "[e]very quasi-judicial decision [of a board of adjustment] shall be subject to review by the superior court by proceedings in the nature of certiorari pursuant to [N.C.G.S. §] 160A-393." N.C.G.S. § 160A-388(e2)(2) (2019) (repealed 2020). In evaluating the lawfulness of such a decision, the trial court should: "(1) review the record for errors of law; (2) ensure that procedures specified by law in both statute and ordinance are followed; (3) ensure that appropriate due process rights of the petitioner are protected, including the right to offer evidence, cross-examine witnesses, and inspect documents; (4) ensure that the decision is supported by competent, material, and substantial evidence in the whole record; and (5) ensure that the decision is not arbitrary and capricious." *S.T. Wooten Corp.*, 210 N.C. App. at 637, 711 S.E.2d at 161 (quoting *Wright v. Town of Matthews*, 177 N.C. App. 1, 8, 627 S.E.2d 650, 656 (2006)). In the event that a litigant

---

[3] In a separate concurring opinion, Judge Berger asserted that Ashe County's failure to appeal from the "decision" embodied in the 22 June 2015 letter precluded Ashe County from challenging the Planning Board's decision to require the issuance of the requested permit to Appalachian Materials, so that neither the Planning Board nor the trial court had jurisdiction over the subject matter of this case. *Ashe Cnty. v. Ashe Cnty. Plan. Bd.*, 265 N.C. App. 384, 400–01, 829 S.E.2d 224, 234–35 (2019) (Berger, J., concurring).

alleges that the Board's decision involves an error of law, that issue is subject to de novo review. *Sun Suites Holdings, LLC v. Bd. of Aldermen of Town of Garner*, 139 N.C. App. 269, 272, 533 S.E.2d 525, 527–28 (2000) (citing *JWL Invs., Inc. v. Guilford Cnty. Bd. of Adjustment*, 133 N.C. App. 426, 429, 515 S.E.2d 715, 717 (1999)). On the other hand, in the event that a petitioner alleges that the Board's decision lacked sufficient evidentiary support or was arbitrary or capricious, the trial court applies the "whole record" test. *Id*. The scope of appellate review in cases like this one is "the same as that of the trial court," *Fantasy World, Inc. v. Greensboro Board of Adjustment*, 162 N.C. App. 603, 609, 592 S.E.2d 205, 209 (2004), so we must evaluate "whether the trial court exercised the appropriate scope of review and, if appropriate, . . . whether the [trial court] did so properly." *Id*. (quoting *Westminster Homes, Inc. v. Town of Cary Zoning Bd. of Adjustment*, 140 N.C. App. 99, 102–03, 535 S.E.2d 415, 417, (2000), *aff'd*, 354 N.C. 298, 554 S.E.2d 634 (2001)).

### B. Interlocutory Appeals

In challenging the Court of Appeals' decision before this Court, Ashe County begins by arguing that the Court of Appeals created a "new system" of interlocutory appeals in the course of holding that Ashe County was partially bound by the 22 June 2015 letter. More specifically, Ashe County argues that the Court of Appeals' decision "ensures piecemeal litigation by creating *sua sponte* a new one-sided interlocutory appeals system without basis in precedent or regulatory law." According to Ashe County, the "system" created by the Court of Appeals ensures that "local governments

are bound unless they appeal within thirty . . . days of the communication any portion of every preliminary communication or evaluation made by their own staff that might be relied upon by an applicant." In Ashe County's view, the Court of Appeals' decision "issues an unfunded mandate to restructure governmental operations" by imposing upon local governments the need to track staff determinations in order to preserve its right to challenge them on appeal, citing *Ashe County*, 265 N.C. App. at 394, 829 S.E.2d at 231.

Ashe County claims that the Court of Appeals' decision "nullifies" a number of this Court's "well-established rules of law." According to Ashe County, the first of these rules is that the government cannot be estopped from asserting the defense of ultra vires, citing *Bowers v. City of High Point*, 339 N.C. 413, 451 S.E.2d 284 (1994), with Ashe County contending that the 22 June 2015 letter was an ultra vires act given that the relevant application was incomplete, citing *Moody v. Transylvania County,* 271 N.C. 384, 388, 156 S.E.2d 716, 719 (1967) (holding that "no recovery can be had" and "the municipality cannot be estopped to deny the validity of the contract" in the event that the contract is ultra vires). Moreover, unlike the circumstances at issue in *S.T. Wooten Corp.* and *Meier*—both of which, in Ashe County's view, "ar[o]se out of a statutory zoning remedy applicable to final staff decisions where parties, including local governments, possessed a regulatory duty to appeal a final staff decision applying a zoning ordinance within a definite time"—Ashe County claims that it had no duty to appeal a staff decision to the Planning Board in light of the fact

that the Planning Board lacks the authority to make final decisions, which are committed to the County Commission in Ashe County's land usage ordinances.

In addition, Ashe County suggests that the Court of Appeals "fail[ed] to understand the [r]ecord" in this matter when it chose to "delv[e] into the factual complexity of the [Planning] Director's preliminary communications to discern whether Appalachian Materials reasonably relied upon [those communications]," with the Court of Appeals having ultimately concluded that Appalachian Materials was, in fact, prejudiced by the June 2015 letter on the theory that Appalachian Materials "could have sought a variance had the Planning Director not made the determination," quoting *Ashe County*, 265 N.C. App. at 393, 829 S.E.2d at 230. In Ashe County's view, this aspect of the Court of Appeals' decision was "arbitrary," "impractical," and "completely wrong" and validated "the wisdom of the no governmental estoppel rule." Moreover, Ashe County contends that Appalachian Materials "could not have reasonably relied upon and did not reasonably rely upon the 22 June 2015 [l]etter" given that, in response to Appalachian Material's request for the issuance of a conditional permit, the Planning Director responded by stating that he would issue a permit for a specific site "assuming the new plans meet the requirements." In view of the fact that the record fails to include a site plan showing the basic components of the proposed plant, such as parking areas, truck areas, and employee bathrooms, or a survey delineating the legal boundaries of the proposed plant, Ashe County contends that the Planning Director could not have objectively

determined whether the plant complied with the applicable setback requirements. Finally, Ashe County contends that it would have been an ultra vires act for the Planning Director to issue a PID Ordinance permit when the application disclosed the existence of a violation of the ordinance's setback requirements.

The second rule of law that Ashe County contends that the Court of Appeals nullified is the fact that "administrative final decisions, including issuance of permits, are routine, nondiscretionary ordinance implementation matters carried out by local government staff," citing *County of Lancaster v. Mecklenburg County*, 334 N.C. 496, 507–08, 434 S.E.2d 604, 612 (1993), who possess "limited authority." According to Ashe County, local government staff perform "a purely administrative or ministerial [capacity] following the literal provisions" of ordinances enacted by elected local government officials, citing *Lee v. Board of Adjustment of City of Rocky Mount*, 226 N.C. 107, 110, 37 S.E.2d 128, 131 (1946). More specifically, Ashe County argues that this Court has established a two-step process that local government staff should use in approving permits: the staff member "review[s] an application to determine . . . 'if it is complete' " and then determines "whether it complies with objective standards set forth in the . . . ordinance," quoting *County of Lancaster*, 334 N.C. at 508, 434 S.E.2d at 612. Ashe County asserts that, in this instance, the Planning Director applied this two-step process by initially recognizing that the application was incomplete and then denying the application once it had been completed on the grounds that it violated the ordinance's setback requirements. Ashe County contends

that, unless the Court of Appeals' decision is overturned, it will be "forever barred from enforcing [the PID Ordinance's] protective buffer" provisions.

Thirdly, Ashe County argues that the Court of Appeals' decision nullifies this Court's "legal presumptions that private parties voluntarily interacting with local government officials know the law and the limits of local government officials' authority," citing *Moody*, 271 N.C. at 389, 156 S.E.2d at 720. In "grant[ing] Appalachian Materials a special exemption from [these presumptions]," Ashe County asserts that the Court of Appeals' decision "taxes non-participating citizens with . . . paying for a [n]ew [s]ystem of interlocutory appeals that protects applicants claiming ignorance of both the law and the limited authority of local government officials" and requires them to pay "to restructure local governments to establish an entirely new tracking system of preliminary communications" for the benefit of "applicants, like Appalachian Materials."

Finally, Ashe County argues that "the State's political subdivisions are exempt from . . . time limitations" unless the deadline in question "expressly applies to the government," citing *Rowan County Board of Education v. U.S. Gypsum Co.*, 332 N.C. 1, 8, 418 S.E.2d 648, 653 (1992). According to Ashe County, the Court of Appeals' decision leads to an "unwarranted tax on innocent North Carolina citizens" given that the "most cost-efficient means to protect public coffers [in the aftermath of the Court of Appeals' decision] is to impose a gag order on government officials' communications with citizens," with any such limitation upon the ability of citizens to communicate

with local governmental officials being likely to have the most significant impact upon those who lack the resources to seek independent legal advice.

In urging us to uphold the Court of Appeals' decision, Appalachian Materials denies that the Court of Appeals' opinion created any sort of "new system" for the handling of permit applications and contends that Ashe County's brief "does not accurately reflect the Court of Appeals' [o]pinion," which involves nothing more than the "application of existing precedent" to the facts of this case. Appalachian Materials asserts that the Court of Appeals simply held "(i) that the nature of the buildings . . . shown in the [a]pplication was determined by the Planning Director in [the 22 June 2015 letter]" and that, "(ii) where a county's planning department official has made an interlocutory determination that is relied upon by an applicant, to its detriment, such determination must be appealed by the county to its board of adjustments within thirty . . . days, otherwise it becomes binding." As a result, Appalachian Materials claims that the Court of Appeals' opinion "created nothing new" and did nothing more than utilize "the practical realities of the rules set forth in the *Meier* and *S.T. Wooten Corp.* decisions (i.e., that local governments are responsible for handling their own planning departments' decision-making processes)" in concluding that the 22 June 2015 letter was binding upon Ashe County given Appalachian Materials' detrimental reliance upon that letter.

According to Appalachian Materials, Ashe County is the party that actually seeks to create a "new system" by diverging from existing precedent. In Appalachian

Materials' view, the "Planning Director is the sole person charged with making interpretations of [the PID Ordinance] and making initial determinations as to whether applications meet [its] objective requirements." For that reason, Appalachian Materials argues that permit applicants are left with "no protections" if they "cannot rely on written determinations from those charged with interpreting and enforcing local land use regulations" and that the adoption of Ashe County's view would enable Planning Directors to reverse prior written determinations "based on the whims of political or community pressure."

In rejecting Ashe County's contention that the Court of Appeals had "nullified" certain basic legal principles, Appalachian Materials begins by disclaiming any suggestion that it is "arguing that [Ashe County] is or should be estopped from enforcing [the PID Ordinance]"; on the contrary, Appalachian Materials claims that it is "arguing, based upon the *S.T. Wooten Corp.* case, that [Ashe County] made a prior determination through its Planning Director" and "should not now be allowed to reverse course and enforce a new interpretation of the same [o]rdinance." Appalachian Materials argues that Ashe County is "attempt[ing] to avoid the clear guidance in *Meier* and *S.T. Wooten Corp.*, by asserting that these cases are distinguishable because [the PID Ordinance] is neither a zoning ordinance nor a unified development ordinance" and contends that such an argument "should be summarily rejected" on the grounds that, "regardless of what an ordinance is called or under what power it is purportedly enacted, if an ordinance 'substantially affects

land use,' it is subject to all requirements and standards regulating planning and land use," citing *Thrash Ltd. Partnership v. County of Buncombe*, 195 N.C. App. 727, 733, 673 S.E.2d 689, 693 (2009), with the PID Ordinance "clearly substantially affect[ing] land use." Appalachian Materials asserts that "[Ashe County] cannot have it both ways—either principles of zoning, development and land use apply to the PID Ordinance, as it argues in support of its argument on the [m]oratorium, or these principles are irrelevant, as it argues in asking this Court to ignore the clear precedent of *Meier* and *S.T. Wooten*."

After noting that Ashe County had made no mention of the last two legal principles that it claimed that the Court of Appeals had "nullified" in its discretionary review petition, citing N.C. R. App. P. 16(a) and *Estate of Fennell v. Stephenson*, 354 N.C. 327, 331–32, 554 S.E.2d 629, 632 (2001), Appalachian Materials contends that it had never "argued or taken the position that it does not know the law or understand the authority of government officials" and that "[Ashe County's] argument regarding the running of time limitations is without merit" given that it "has not offered any explanation for why . . . it could not have appealed the [22 June 2015 letter] pursuant to [N.C.G.S.] § 160A-388(b1)(1)" or pursuant to Planning Ordinance § 153.04(J)(3) as a "person who is directly affected" by a staff decision.

A careful review of the Planning Director's 22 June 2015 letter establishes that it is not, in whole or in part, any sort of final determination. For that reason, we believe that this case, rather than being controlled by *Meier* and *S.T. Wooten Corp.*,

more closely resembles *Raleigh Rescue Mission, Inc. v. Board of Adjustment of City of Raleigh* (*In re Historic Oakwood*), 153 N.C. App. 737, 571 S.E.2d 588 (2002). As a result, we hold that the Court of Appeals erred by holding that Ashe County lost its right to challenge the issuance of the permit to Appalachian Materials because it failed to appeal the 22 June 2015 letter to the Planning Board.

In *In re Historic Oakwood*, "[i]n response to an inquiry from [the City of Raleigh's] Deputy City Attorney," the zoning inspector supervisor, having reviewed the necessary materials, issued a memorandum stating his opinion that, while the "proposed multi-family building proposed by the [petitioner] is permitted[,] [t]he overall operation of the [petitioner] on this site, based on the implication of the Board of Adjustment case, may not be." *Id.* at 739–42, 571 S.E.2d at 589–91 (emphases omitted). In concluding that the memorandum did not constitute an appealable final decision, the Court of Appeals noted that, for there to be a right of appeal under [N.C.G.S. §] 160A-388(b)," "the order, decision, or determination of the administrative official must have some binding force or effect" and that, "[w]here the decision has no binding effect, or is not 'authoritative' or 'a conclusion as to future action,' it is merely the view, opinion, or belief of the administrative official," citing *Midgette v. Pate*, 94 N.C. App. 498, 502–03, 380 S.E.2d 572, 575 (1989). *In re Historic Oakwood*, 153 N.C. App. at 742–43, 571 S.E.2d at 591. In light of the fact that the zoning inspector supervisor "had no decision-making power at the time he issued his memorandum," the Court of Appeals determined that "the memorandum itself affect[ed] no rights"

and that the memorandum "was merely advisory in response to a request by [the Deputy City Attorney]." *Id*. at 743, 571 S.E.2d at 591–92.

In *Meier*, on the other hand, the petitioner requested that the Planning Department of the City of Charlotte provide an interpretation of a zoning ordinance as it applied to an adjacent structure that was, at the time, under construction. *Meier*, 206 N.C. at 472, 698 S.E.2d at 706. In response to this request, the interim Zoning Administrator and the successor Zoning Administrator each conducted separate visits to the construction site for the purpose of attempting to respond to the petitioner's question and informed both the petitioner and the owner that they would each receive a letter describing "the manner in which the zoning ordinance would be interpreted and the extent to which additional documentation would be needed so that the builder could obtain a certificate of occupancy." *Id*. Shortly thereafter, the interim Zoning Administrator sent the parties a letter which stated that "[t]he Planning Department is providing the following interpretation of [the zoning ordinance at issue]"; that, since the necessary adjustments had been made by the owner to ensure that the structure "[did] not violate the [applicable zoning ordinance]," the owner merely needed to submit a sealed survey for the purposes of "verify[ing] that the site measurement[s] [the owner] [had] provided [were] accurate" in order for a certificate of occupancy to be released. *Id*. at 474, 698 S.E.2d at 707. In determining that this letter constituted a final, binding decision by the Planning Department, the Court of Appeals noted that, "[b]y his own admission, [the

petitioner] sought an interpretation of the [z]oning [o]rdinance as applied to" the structure in question, that the interim Zoning Administrator possessed "the authority to render an official interpretation of the relevant provisions of the zoning ordinance," and that the interim Zoning Administrator's letter "explicitly dealt with the issue of whether the structure complied with the [zoning ordinance at issue] by explaining the methodology utilized to determine the structure's compliance." *Id.* at 477, 698 S.E.2d at 708–09. As a result, the Court of Appeals determined that the letter "amounted to an evaluation of the extent to which the structure as proposed and as described in the site plans and architectural plans submitted for review by the interim Zoning Administrator complied with the relevant provisions of the Charlotte zoning ordinance" and that the "effect of the . . . letter was to inform [the owner] that, in the event that the structure was built as outlined in the site plans and architectural drawings, it would pass muster for zoning compliance purposes—a determination which "clearly affected the rights of both parties." *Id.* at 477–79, 698 S.E.2d at 709–10. In reaching this conclusion, the Court of Appeals determined that the letter was "clearly couched in determinative" and "authoritative," "rather than advisory" or "tentative" terms. *Id.* at 478–79, 698 S.E.2d at 709–10.

Similarly, in *S.T. Wooten Corp.*, the petitioner requested a zoning determination letter from the Town of Zebulon's Planning Director concerning whether the petitioner's property, which was zoned "Heavy Industrial," could be used for the construction and operation of an asphalt plant. *S.T. Wooten Corp.*, 210 N.C.

App. at 634, 711 S.E.2d at 159. The Planning Director responded by sending a letter stating that it was his "interpretation . . . that asphalt plants fall within [the list of permitted uses in the relevant zoning category] or are similar enough to be grouped together and are therefore also permitted" and that, "prior to any construction a site plan must be reviewed by the Zebulon Technical Review Committee and construction plans must be submitted along with an application in pursuit of a building permit." *Id*. at 635, 711 S.E.2d at 159. The Planning Director reiterated this conclusion in a subsequent "Zoning Consistency Determination" and in a letter to the North Carolina Department of Environment and Natural Resources. *Id*. at 635, 711 S.E.2d at 159–60. In light of the fact that the petitioner had "specifically requested that the Planning Director interpret the Zebulon Ordinance and determine whether an asphalt plant was a permitted use," the fact that the Planning Director "was expressly empowered by . . . the Zebulon Ordinance to provide formal interpretations of the zoning provisions therein," and the fact that the Zebulon Ordinance provided that "such zoning interpretations by the [Planning Director] may be binding," the Court of Appeals determined that the initial letter that the Planning Director sent to the petitioner constituted "a clear exercise of the [Planning Director's] authority to evaluate and determine to what extent a proposed use complied with the ordinance" and served as "a formal interpretation of the zoning ordinance to a landowner seeking such interpretation as it related specifically to its property." *Id*. at 641–42, 711 S.E.2d at 163. "Because that . . . determination was lawful and not in violation of the

-29-

ordinance," the Court of Appeals concluded that "the Town should not now be allowed to enforce a new interpretation of the same ordinance by injunction or otherwise." *Id.* at 644, 711 S.E.2d at 165.

Unlike the communications at issue in *Meier* or *S.T. Wooten Corp.*, the letter that the Planning Director sent to Appalachian Materials on 22 June 2015 was not couched in anything resembling "determinative" or "authoritative" terms. On the contrary, the record that is before us in this case reflects that the Planning Director explicitly stated that he *did not* possess the authority to issue a PID Ordinance permit until all of the necessary conditions had been met and that, as of 22 June 2015, all necessary conditions *had not* been met. In this sense, the Planning Director's 22 June 2015 letter was nothing more than a "recommendation" that was being provided at that preliminary stage of the review process and constituted something *less than* a decision in Appalachian Materials' favor in light of the Planning Director's inability to make such a decision. In addition, the 22 June 2015 letter did not affect the rights of the parties given that no permit was issued or denied and no action was authorized or prohibited because of the transmission of that communication. As a result, the facts of this case are much more similar to those at issue in *In re Historic Oakwood* than either *Meier* or *S.T. Wooten Corp.*, all of which we believe to have been correctly decided.

In addition, we also conclude that *no part* of the 22 June 2015 letter constituted a final, binding decision that Ashe County had to appeal to the Planning Board in

order to preclude any part of that letter from having a binding effect. We agree with Ashe County that the Court of Appeals' determination that the chart attached to the 22 June 2015 letter constituted a final and binding decision with respect to the setback requirements suggests that an interlocutory appeal must be taken from any staff assessment addressing the extent to which an applicant has satisfied any particular ordinance requirement regardless of whether that staff assessment was otherwise appealable in order to avoid being bound by it. Any such decision would invite the prosecution of multiple, piecemeal appeals from land-use decisions made by local government staff, a practice that this Court has repeatedly discouraged at the appellate level. *See, e.g., Veazey v. City of Durham*, 231 N.C. 357, 363–64, 57 S.E.2d 377, 382 (1950) (stating that "[t]here is no more effective way to procrastinate the administration of justice than that of bringing cases to an appellate court piecemeal through the medium of successive appeals from intermediate orders" and that "[t]he rules regulating [interlocutory appeals] are designed to forestall the useless delay inseparable from unlimited fragmentary appeals, and to enable courts to perform their real function, i.e., to administer 'right and justice . . . without sale, denial, or delay' " (quoting N.C. Const. art. I, § 35)). As is the case at the appellate level, the adoption of a requirement that parties take interlocutory appeals in order to avoid the risk of being precluded from taking action at a later time risks the introduction of unnecessary delay, confusion, and expense into the land-use regulation process. Nothing in either *Meier* or *S.T. Wooten Corp.*, both of which

involved determinations that were final, rather than interlocutory, in nature, requires such a result, and we disclaim any suggestion that existing law makes the taking of interlocutory, land-use-related appeals necessary in order to avoid giving such interlocutory determinations binding effect or that interlocutory land-use decisions may never be changed regardless of the nature of the relevant circumstances. See *Russ v. Woodard*, 232 N.C. 36, 41, 59 S.E.2d 351, 355 (1950) (stating that "[a]n interlocutory order or judgment differs from a final judgment in that an interlocutory order or judgment is subject to change by the court during the pendency of the action to meet the exigencies of the case") (cleaned up). As a result, for all of these reasons, we reverse the Court of Appeals' decision with respect to the issue of whether Ashe County was precluded from challenging the issuance of the PID Ordinance permit to Appalachian Materials on the grounds that it failed to seek review of the statements that the Planning Director made in the 22 June 2015 letter.

### C. Other Issues

The Court of Appeals addressed a number of additional issues in its opinion, including whether Appalachian Materials' application was sufficiently complete at the time that it was submitted to the Planning Director to trigger the application of the permit choice statutes, whether the Planning Director was authorized to deny Appalachian Materials' permit application on the basis of the moratorium statute, whether the proposed asphalt plant was located within 1,000 feet of a commercial building, and whether the Planning Board erred by rejecting the Planning Director's

determination that Appalachian Materials' application contained material misrepresentations. Each of these issues was discussed in detail in the briefs that the parties filed with this Court and, in view of our determination that Ashe County's failure to appeal to the Planning Board from the 22 June 2015 letter did not preclude the Planning Director from revisiting the issue of whether Appalachian Materials was entitled to the issuance of the requested permit following the issuance of the air quality permit, each of these issues must be resolved in order to fully address Ashe County's appellate challenge to the lawfulness of the trial court's order. In view of the fact that the Court of Appeals expressly relied upon Ashe County's failure to appeal from the 22 June 2015 letter to the Planning Board in rejecting its contention that the proposed asphalt plant violated the setback requirements of the PID Ordinance and the fact that all of these additional issues appear to us to be, to a greater or lesser extent, interrelated with the appeal-related issue that we have resolved earlier in this opinion, we conclude that the Court of Appeals should revisit each of these additional issues and decide them anew without reference to the fact that Ashe County did not appeal the 22 June 2015 letter. Although the 22 June 2015 letter did not constitute a final decision triggering the necessity for an appeal, we do not hold that that letter is irrelevant to the making of the necessary determinations on remand, with the parties remaining free to argue any legal significance that the letter may or may not, in their view, have. As a result, we hold that this case should

be remanded to the Court of Appeals for reconsideration of each of these additional issues in light of our decision today.

### III. Conclusion

Thus, for all of these reasons, we conclude that the Court of Appeals erred by determining that Ashe County's failure to appeal the Planning Director's 22 June 2015 letter gave that letter partially binding effect and reverse the portion of the Court of Appeals' decision that reached a contrary conclusion. In addition, in view of the interrelationship between the proper resolution of the remaining issues that are before us in this case and the Court of Appeals' erroneous determination that Ashe County was bound by the opinions that the Planning Director expressed in the 22 June 2015 letter, we remand this case to the Court of Appeals for reconsideration of the remaining issues in light of our decision that the 22 June 2015 letter is not entitled to preclusive effect. As a result, the Court of Appeals' decision is reversed, in part, and remanded to the Court of Appeals for further proceedings not inconsistent with this opinion.

REVERSED, IN PART, AND REMANDED.